## ALBERT PICK–BARTH CO., Inc., et al. v. MITCHELL WOODBURY CORPORATION.

### No. 2648.

Circuit Court of Appeals, First Circuit.

March 18, 1932.

See also (D. C.) 36 F.(2d) 974; (C. C. A.) 41 F.(2d) 148.

Edward F. McClennen, of Boston, Mass. (Jacob J. Kaplan, of Boston, Mass., on the brief for Pick-Barth Co., Inc.; Leo S. Hamburger, of Boston, Mass., on the brief for Stuart and McDonald), for all appellants.

Claude B. Cross, of Boston, Mass. (Edward C. Park and Withington, Cross, Proctor & Park, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and HALE, District Judge.

WILSON, Circuit Judge.

This is an action brought in the District Court of Massachusetts under section 7 of the Sherman Anti-Trust Law, as amended by section 4 of the Clayton Act (sections 1 and 15, title 15, USCA), and is here on appeal by defendants from the judgment in that court.

By section 1 of the Sherman Act, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

Section 7 of the Sherman Act as amended by section 4 of the Clayton Act provides that: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

The declaration of the plaintiff in substance alleges: That the plaintiff was engaged in interstate commerce; that the defendant corporation was one of a combination of corporations controlled by allied interests engaged in the same trade or business as the plaintiff, and constituted the largest and a dominating factor in that trade throughout

the United States; that the defendants Stuart and McDonald were, prior to January 1, 1929, trusted employees of the plaintiff, having access to its records, plans, lists of customers, present and prospective, cost records, and other data; that said defendants entered into a conspiracy to deprive the plaintiff of its interstate business in its kitchen equipment and kitchen utensils, and to restrain or destroy the competition of the plaintiff with the defendant corporation in the several states; that in furtherance of such conspiracy, and by arrangement with the defendant corporation, the said Stuart and McDonald left the plaintiff's employ and entered the employ of the defendant corporation, and took with them the plaintiff's list of customers, present and prospective, cost records, plans, and other data necessary to the conduct of its said business, and also induced the other members of the trained organization and staff of the plaintiff in its kitchen equipment department to leave without notice to the plaintiff, and enter the employ of the defendant corporation; that before leaving its employ, said Stuart and McDonald secretly solicited the plaintiff's customers in behalf of the defendant corporation and did other acts to prevent the plaintiff acquiring new business, all of which the plaintiff alleges was a violation of section 1 of the Anti-Trust Act, and injured it in its business and property.

A demurrer to the declaration was filed by the defendants on the ground that the declaration set forth no violation of section 1 of the Anti-Trust Act; that no violation of the act resulted from the establishing by the defendant of a place of business in Massachusetts for dealing in kitchen equipment, and even though the defendants did engage certain of the plaintiff's employees they were not under contract with the plaintiff; and admitting the defendants did all it is alleged, it constituted no offense under the anti-trust laws, in that there was no allegation of an unreasonable restraint of interstate commerce.

■ This court, however, in 41 F.(2d) 148, held that the declaration sufficiently set out a conspiracy to restrain trade between the several states; that it alleged with substantial certainty that a conspiracy existed and its purpose was to deprive the plaintiff of its interstate trade in kitchen equipment and to destroy competition therein; that although each of the several acts alleged to have been done in furtherance of the alleged conspiracy might not alone constitute any federal offense, it is of no consequence if, taken together, the intent and purpose was to restrain interstate commerce. Swift & Co. v. United States, 196 U. S. 375, 395, 25 S. Ct. 276, 49 L. Ed. 518; Binderup v. Pathe Exchange, 263 U. S. 291, 312, 44 S. Ct. 96, 68 L. Ed. 308. The object and intent of the combination determines its legality. Loewe v. Lawlor, 208 U. S. 274, 297, 28 S. Ct. 301, 52 L. E. 488, 13 Ann. Cas. 815.

■ It is urged, however, that this court in its opinion laid down the law for the trial of the case, and to the effect that no damages could be recovered unless it was shown that any restraint that resulted from any acts of the defendants unreasonably affected interstate trade, and to the injury of plaintiff's interstate business. But the law laid down in support of a declaration on demurrer may not apply to every state of facts that may be proven under the declaration. The only issue on demurrer is whether there are sufficient allegations to support an action. Pennsylvania Mining Co. v. United Mine Workers (C. C. A.) 28 F.(2d) 851, 853. The facts proven may require an application of law in addition to that laid down in support of a declaration on the issue raised by a demurrer.

■ In holding that the declaration contained sufficient allegations to sustain an action, and in reversing the judgment of the District Court in sustaining the demurrer, this court held [page 150 of 41 F.(2d)] that: "It can hardly be said that allegations that the defendants entered into a conspiracy to restrain the competition of the plaintiff in trade and commerce among the several states, and to deprive it of its business and to obtain that business for the defendant, do not charge with substantial certainty an intent to restrain commerce and the full and free flow of interstate competition. Addyston Pipe Co. v. United States, 175 U. S. 211, 241, 242, 20 S. Ct. 96, 44 L. Ed. 136."

And again: "We think from a survey of the decisions it must be held that any combination the intent of which is to suppress competition in interstate commerce, is unreasonable, and, if put into effect, may be said unduly to obstruct trade. If a merger is formed for a lawful purpose, and through the result of increased output and decreased overhead prices can be and are reduced, and as a result a less favored competitor is unable to compete in interstate commerce, no offense results because of the lessened competition. If, however, the merger or combination can be shown to have been formed with the intent to destroy a competitor and suppress its interstate competition and the

intent is accomplished, it is within the prohibition of the statute."

And, finally: "The acts complained of were all calculated to destroy the plaintiff's interstate business, as alleged, through the efforts of its old employees working against it, not only openly but secretly while in its employ, and in behalf of a competitor, which is a dominant factor in the business throughout the United States."

While at the close of its opinion as originally drafted this court said that the plaintiff could not recover if the proof showed no more than inconvenience in conducting its business and no effect upon its interstate trade, or that its losses resulted from another cause than the restraint or diminution of its interstate commerce, upon its attention being called to this statement as not being an accurate statement of the law, in view of the allegations in the declaration, it was stricken out.

The opinion of the court on the issues raised by the demurrer, therefore, should not be construed to require that in order for the plaintiff to recover it must show that its losses resulted directly from a suppression of its interstate trade, but if they flowed from any act of the defendants in furtherance of an unlawful combination with the intent to restrain interstate trade, it is sufficient to enable it to recover.

At the trial in the court below, the jury were asked to make special findings, and the following questions were submitted to them, and their answers are appended:

"Q. 1. Did the defendants or any of them conspire together to deprive the plaintiff of its business in kitchen equipment and furnishings? A. Yes.

"Q. 1 (a). If so, which of said defendants were parties to said conspiracy? A. Albert Pick-Barth Co., Inc., George A. Stuart and John J. McDonald.

"Q. 2. Was a substantial part of the plaintiff's business affected by said conspiracy of an interstate character? A. Yes.

"Q. 2 (a). If so, was the amount of such interstate business substantial? A. Yes.

"Q. 3. Were the defendants in conspiracy as aforesaid actuated by any purpose or intent to eliminate or restrict the competition of the plaintiff in interstate trade in kitchen furnishings and equipment? A. Yes.

"Q. 4. Was the business of the plaintiff in kitchen furnishings and equipment a substantial factor in the interstate trade in those commodities in New England? A. Yes.

"Q. 4 (a). If so, did the defendant's acquisition of the plaintiff's business effect an unreasonable restraint of trade? A. No.

"Q. 5. What is the amount of the plaintiff's damages sustained by reason of said conspiracy? A. $40,000."

Thereupon the plaintiff moved for a directed verdict for the plaintiff for $40,000.

The presiding judge then said:

"What I think I will do is, in view of the answer to the third question, I will let the jury return a verdict for the plaintiff in the alternative form for $40,000, and then I will take up the questions of law on motion.

"Mr. Foreman and gentlemen, assuming that actual intent to interfere with interstate trade, by means of a conspiracy, subjects the parties to it to damages, you should return the verdict for the plaintiff here for the amount of the damages, and you may therefore return a verdict for the plaintiff in the alternative form. I have put it in that form so that if the plaintiff is not in fact entitled to recover, a proper correction may be made by this court, or by the Circuit Court of Appeals, or by the Supreme Court of the United States."

On motion of the defendant to set aside all the special findings except as to question 4 (a), and of the plaintiff to set aside the finding as to 4 (a), the presiding judge in overruling the motion of both parties held:

"While the question is not free from doubt, the opinion taken as a whole intimates I think that interstate business is protected by the Sherman and Clayton Acts against intentional interference and injury of tortious character inspired by the intent here found, and that where such injury and intent are shown it is not necessary to prove injury to the public by unreasonable restraint. It follows that special finding 4 (a), viz., that the defendant's acquisition of the plaintiff's business did not effect unreasonable restraint of that trade, is immaterial, and that judgment should be entered on the verdict for the plaintiff.

"If on the other hand a conspiracy to injure or steal an interstate business is not actionable under these statutes unless it affected the public interest injuriously, special finding 4 (a) determines that fact in the defendant's favor, and the alternative verdict for the defendant should be entered."

The defendant corporation thereupon appealed and filed forty-eight assignments of error, the defendant Stuart twenty-one, and the defendant McDonald twenty-three. The

appellate courts have many times expressed their disapproval of such methods. Many of the assignments here are merely repetitions of others, or at least preserve no additional rights. Such methods not only are calculated to confuse counsel on the other side as to what the real contention of the appellant is, but also place an unnecessary burden on the court.

While the rule (11) of this court respecting assignments of error provides that the appellant shall file with his petition for appeal "an assignment of error which shall set out separately and particularly each error asserted and intended to be urged," it does not mean that counsel shall set forth substantially the same error in as many different forms as can be devised.

As the court said in Phillips, etc., Constr. Co. v. Seymour, 91 U. S. 646, 648, 23 L. Ed. 341: "This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on."

Also see Chesapeake & D. Canal Co. v. United States, 250 U. S. 123, 124, 39 S. Ct. 407, 63 L. Ed. 889.

It has even been held that such unnecessary prolixity of assignments may justify a dismissal of an appeal. Patterson v. Mobile Gas Co., 271 U. S. 131, 132, 46 S. Ct. 445, 70 L. Ed. 870. Attention is also called to the following cases: Sartain v. United States (C. C. A.) 16 F.(2d) 704; Welter v. United States (C. C. A.) 4 F.(2d) 342; McWhorter v. United States (C. C. A.) 297 F. 120; Fitter v. United States (C. C. A.) 258 F. 567; Clark v. United States (C. C. A.) 258 F. 437.

The gist of the forty-five assignments by the appellant in this case we think may be fairly summarized thus: That the district judge erred in refusing to direct a verdict for the defendant on the ground (1) that there was no evidence to warrant the special findings of the jury except as to 4 (a); (2) by reason of its finding that no unreasonable restraint of interstate trade resulted from the defendant's acquisition of the plaintiff's business; and (3) that there was no evidence to warrant the finding that the plaintiff was damaged to the extent of $40,000 in its interstate business; and (4) that any damages the plaintiff suffered did not result from any tortious acts of the defendants.

In the main the assignments are of alleged errors in specific rulings on the various elements which are included in the above summary. As to the assignments of error, either on the ground that the evidence did not warrant the findings of fact except the answer to 4 (a), or in the failure to give the several instructions as requested by the defendant, we think no prejudicial error is shown, and it is not necessary to consider them seriatim.

As to whether there was evidence to support the special findings and whether the presiding judge erred in not directing a verdict for the defendants in view of the jury's finding that the acquisition of the plaintiff's kitchen equipment business—or so much as the defendant corporation acquired—did not result in an unreasonable restraint of interstate trade, the admissions in the answer and the undisputed evidence disclose that the plaintiff is, and in 1928 was, a corporation engaged in a wholesale and retail business in the city of Boston (dealing in china, glassware, crockery, and kindred lines of merchandise, and especially in designing, manufacturing, and installing kitchen utensils and equipment for restaurants, clubs, hotels, and large institutions); that its business was in a large measure through the New England States and was therefore interstate; that the defendant Albert Pick-Barth Company, Inc., is a New York corporation organized in 1928, and is one of a number of associated or subsidiary corporations, all controlled through stock ownership by the Albert Pick-Barth Company, Inc., a Maryland corporation; that these allied corporations are engaged in business closely related, if not wholly similar, to that of the defendant corporation, and in combination constituted the largest and a dominating factor in the United States in this line of trade; that prior to 1929, the only one of these Pick-Barth Companies engaged in business in the New England States was the L. Barth & Co., Inc., which had a branch office in Boston, and was, prior to that time, to a limited extent only, an interstate competitor of the plaintiff corporation in the kitchen equipment business; that the defendant Stuart was at one time president and treasurer of the Mitchell Woodbury Company, the predecessor of the plaintiff, Mitchell Woodbury Corporation, and until December 31, 1928, was an employee of the plaintiff corporation; that the defendant McDonald was also an employee of the plaintiff as manager of its kitchen equipment business; that in October, 1928, Stuart entered into an agreement with the plaintiff to purchase, or for an option to purchase, at any time prior to January 1, 1929, the

kitchen equipment business of the plaintiff; that hearing that the Pick-Barth interests were contemplating extending their business in Massachusetts, Stuart first entered into negotiations with officers of the L. Barth & Co., Inc., to take over his option or contract to purchase the kitchen equipment business of the plaintiff and employ him as their representative in New England; that he represented to them that he could bring with him all the employees of the plaintiff in this branch of their business and their records and plans; that those negotiations fell through, as Stuart was unable to finance the proposition alone, and the representatives of the Pick-Barth Companies in the early part of December, 1928, on learning that Stuart's contract did not entitle him to the records and plans of the plaintiff, refused to join in the plan proposed by Stuart.

It is not contended that up to this point there was any violation of the Anti-Trust Acts, or that any violation would have resulted from the carrying out of the plan first proposed by Stuart, so long as it was confined to taking over the contract or option to purchase the kitchen equipment business of the plaintiff.

There was evidence, however, from which we think the jury from its answers to the questions submitted to it must have found that Stuart became aware in the early part of December, 1928, that the representatives of the Pick-Barth interests were not interested in taking over his option or contract with the plaintiff, but that if he had the records of the plaintiff in his kitchen equipment department, and was free of any complications under his contract, they would be interested in establishing a place of business in Boston, on a much larger scale than they had previously done, and under the management of Stuart and McDonald. It also appeared that they had been endeavoring to secure the services of McDonald for several years.

There was also evidence in support of the jury's special finding that there was a conspiracy between these defendants, the purpose and intent of which was to acquire the plaintiff's business in kitchen equipment for the Pick-Barth interests, and to eliminate the plaintiff as a competitor in this line, and that the conspiracy was in process of development during December, 1928, and January and February, 1929; on the part of the defendant corporation, to organize and establish its business in Massachusetts by opening a place of business in Boston with the former employees of the plaintiff added to its staff; on

the part of Stuart and McDonald in holding off until the afternoon of December 31st before notifying the plaintiff that Stuart would, not take up his option or fulfill his contract to purchase, whichever it may have been, or that McDonald and the other employees in the kitchen equipment department would leave, as they did, on January 1st, against the protests of the plaintiff; and, further, by Stuart and McDonald, one or both of them, taking with them a large part of the records, plans, and designs, including the list of customers of the plaintiff, which were not entirely restored except as the result of an action in the courts.

At the time of leaving the employ of the plaintiff, Stuart informed the president of the company that they would see that the plaintiff got no new business in that line. It also appeared that Stuart and his counsel had previously informed representatives of the Pick-Barth interests that if they—Stuart and McDonald—did not obtain the records of the plaintiff, they could familiarize themselves with them in a short time.

Other evidence in support of the jury's findings also showed that, even before leaving the plaintiff's employ, Stuart had taken steps to secure offices in Boston, and as soon as he and McDonald had severed their connection with the plaintiff, they set up an organization consisting of the former staff of the plaintiff in its kitchen equipment department, and solicited trade among the customers of the plaintiff, whose business immediately showed a marked decrease during 1929. It was some time before the plaintiff could perfect another organization in its kitchen equipment department, and as a result of the action of Stuart and McDonald in conjunction with the defendant corporation, it suffered considerable loss of business, both interstate and intrastate. That Stuart and McDonald were backed financially by the defendant corporation from the time they left the plaintiff's employment on January 1st, 1929, can hardly be questioned upon the evidence.

While the jury found that there was a conspiracy between the defendants to eliminate the plaintiff as a competitor in interstate trade in kitchen equipment, in which it was a substantial factor throughout the New England States, either because it was not fully accomplished, and there was no evidence that the public directly suffered from an increase in prices as a result of the acts of the defendants, and the plaintiff after a time succeeded in re-establishing an organization

in its kitchen equipment department, or because the jury misunderstood the instructions of the court in this respect, the jury found that "the acquisition of the plaintiff's business did not effect an unreasonable restraint of trade."

■ The chief contention of the counsel for the defendants is that, under the decisions of the Supreme Court, unless there was unreasonable restraint of interstate trade, there is no violation of the Anti-Trust Acts, and a verdict should have been entered for the defendants.

But we think it is not necessary to show an unreasonable restraint of interstate trade as an accomplished fact, if a conspiracy is proved, the intent and purpose of which, if carried out, would eliminate the largest competitor of one of the conspirators in a particular section of the country, which competitor controlled a substantial part of the trade in that section, and one of the methods of suppressing such competition was unlawful or unfair competition. Such a result, if accomplished, would clearly be an unreasonable restraint of trade. United States v. Trenton Potteries Co., 273 U. S. 392, on page 397, 47 S. Ct. 377, 379, 71 L. Ed. 700, 50 A. L. R. 989, in which case the court said:

"Our view of what is a reasonable restraint of commerce is controlled by the recognized purpose of the Sherman Law itself. Whether this type of restraint is reasonable or not must be judged in part at least, in the light of its effect on competition, for, whatever difference of opinion there may be among economists as to the social and economic desirability of an unrestrained competitive system, it cannot be doubted that the Sherman Law and the judicial decisions interpreting it are based upon the assumption that the public interest is best protected from the evils of monopoly and price control by the maintenance of competition."

In Hitchman Coal & Coke Co. v. Mitchell, Individually et al., 245 U. S. 229, 259, 38 S. Ct. 65, 75, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, the court said: "Certainly, if a competing trader should endeavor to draw custom from his rival, not by offering better or cheaper goods, employing more competent salesmen, or displaying more attractive advertisements, but by persuading the rival's clerks to desert him under circumstances rendering it difficult or embarrassing for him to fill their places, any court of equity would grant an injunction to restrain this as unfair competition." A conspiracy to eliminate a competitor in inter-state trade by such a method would be unlawful.

■ Whether a conspiracy is legal or illegal, is a question of law depending on the facts proven as to the nature of the conspiracy. If it is a price fixing combination, it is not a question to be proven whether the prices fixed are reasonable; but if it is found that the purpose of the combination is to fix prices, as a matter of law it is a conspiracy or combination in unreasonable restraint of trade, United States v. Trenton Potteries Co., supra, because it restricts competition to which the public is entitled.

■ If a conspiracy is proven, the purpose or intent of which is by unfair means to eliminate a competitor in interstate trade and thereby suppress competition, such a conspiracy, we think, is a violation of section 1 of the Sherman Act. It is the intent and purpose which determines the legality of the conspiracy or combination. Loewe v. Lawlor, supra. If acts done in furtherance of such unlawful purpose—though the unlawful purpose is not accomplished to such an extent as to constitute an unreasonable restraint of interstate trade—result in injury to a competitor in his business and property, such injured person may recover damages for whatever injuries he has thereby suffered.

■ To constitute an offense under section 1 of the Sherman Act, it is not necessary, if a conspiracy is proven, the purpose and intent of which was to eliminate by unfair means a competitor in interstate trade, to show that the public was affected, and to what extent. Nor is it necessary under this act, as it is at common law, to prove any overt acts in order to constitute the offense defined in section 1; but if overt acts are proved in furtherance of the offense defined in section 1, and any one is thereby injured in his business or property, the conspirators under section 7 of the Act are liable therefor.

In Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390, 396, 27 S. Ct. 65, 66, 51 L. Ed. 241, the court said: "There can be no doubt that Congress had power to give an action for damages to an individual who suffers by breach of the law. Montague v. Lowry, 193 U. S. 38, 24 S. Ct. 307, 48 L. Ed. 608. The damage complained of must almost or quite always be damage in property, that is, in the money of the plaintiff, which is owned within some particular state. In other words, if Congress had power to make the acts which led to the damage illegal, it could authorize a recovery for the damage,

although the latter was suffered wholly within the boundaries of one state. Finally, the fact that the sale was not so connected in its terms with the unlawful combination as to be unlawful (Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679), in no way contradicts the proposition that the motives and inducements to make it were so affected by the combination as to constitute a wrong."

So in this case, the jury having found as facts that the defendants conspired together to deprive the plaintiff of its kitchen equipment business, a substantial part of which was between the states and a substantial factor, at least, in interstate commerce in the New England States, and that the defendants, in whatever they did in furtherance of the conspiracy, were actuated by a purpose and intent to eliminate or restrain by unfair methods, and in a substantial degree, the competition of the plaintiff in interstate trade, it was an unlawful conspiracy.

They were, therefore, each guilty of the offense defined in section 1 of the Sherman Act; and under section 7, as amended by the Clayton Act, were liable for all damages to the plaintiff's business and property, of whatever nature, suffered through their acts in furtherance of their unlawful purpose. We are of the opinion that there was no error in the presiding judge directing the jury to bring in a verdict for the plaintiff for the amount of the damages found by them.

The judgment of the District Court for the plaintiff is affirmed, with costs.