**duPONT WALSTON, INC., a Delaware corporation, Plaintiff,**

**v.**

**E. F. HUTTON & COMPANY, INC., a Delaware corporation, and George W. Elwell, Defendants.**

**No. 73–1558–Civ–CF.**

United States District Court, S. D. Florida.

Nov. 30, 1973.

James L. Armstrong, III, of Smathers & Thompson, Miami, Fla., for plaintiff.

Edward A. Kaufman, of Friedman, Britton & Stettin, Miami, Fla., for defendants.

## ORDER OF DISMISSAL

FULTON, Chief Judge.

On October 3, 1973, immediately after a lengthy hearing, this Court dictated an Order from the bench which denied the motion of defendants E. F. Hutton & Company, Inc. and George W. Elwell to dismiss the complaint and denied duPont's prayer for a temporary injunction. Thereafter, on November 19, the Court formalized its rulings by entering a separate Order.

On October 15, 1973, the plaintiff duPont Walston, Inc. filed an amended

complaint which substantially re-alleges the allegations of the original complaint, and apparently does nothing more than separate the allegations into two counts, charging unfair trade practices in one count and violation of the antitrust laws in the other.

Since the October hearing defendants have again challenged the jurisdiction of this Court, this time contending that duPont and both defendants, Hutton and Elwell, have contractually bound themselves to submit controversies between them to the New York Stock Exchange for arbitration. DuPont resists arbitration contending that cases involving the antitrust laws are not subject to arbitration, citing American Safety Equipment Corp. v. J. P. Maguire and Company, 391 F.2d 821 (2nd Cir. 1968). A hearing upon this motion was hurriedly and briefly conducted. Hutton adduced a knowledgeable representative of the Stock Exchange, who testified generally as to the Exchange's arbitration procedures and the contractual obligation of the parties to arbitrate their differences there.

The parties agree that actions based upon the antitrust laws are not subject to arbitration. This brings us back to the original motion to dismiss the complaint, as amended, on the ground that it fails to state a claim based upon violation of the antitrust laws. Although jurisdiction is always of threshold criticality, when the defendants originally challenged this Court's jurisdiction, that issue was carried with the case because the Court then felt that its resolution might depend upon factors which were factually and jurisdictionally intermeshed.

Since the more recent hearing on the motions to dismiss or stay this cause to permit its arbitration by the New York Stock Exchange, the Court has carefully reviewed all cited cases, including an opinion of the United States District Court for the Eastern District of Pennsylvania, C. Albert Sauter Company, Inc. v. Richard S. Sauter Company, Inc., 368 F.Supp. 501, written by Judge Broderick in civil action 72–1451 of that Court and filed October 5, 1973.

In the *Sauter* opinion, which dealt with post jury trial motions and comprises more than fifty pages, the Court found that the plaintiff had alleged and proved a conspiracy to engage in acts of unfair competition, with the intent to injure the plaintiff as a competitor, by impairing plaintiff's ability to compete in interstate commerce; and the Court concluded that such a conspiracy was a *per se* violation of Section 1 of the Sherman Act, so as to obviate the necessity for proof of public injury. In that opinion the Judge stated that:

Instances where courts have been called upon to apply Section 1 of the Sherman Act to conspiracies to injure or destroy a competitor in interstate commerce have been rare—only three or four reported cases in almost a century. Only the First and Tenth Circuits have considered the issue, the First Circuit in Atlantic Heel Co. v. Allied Heel Co., 284 F.2d 879, 885 (1960), and Albert Pick-Barth Co. v. Mitchell Woodbury Corp., 57 F.2d 96 (1932), cert. den. 286 U.S. 552, 52 S. Ct. 503, 76 L.Ed. 1288 (1932), aff'g 41 F.2d 148 (1930), and the Tenth Circuit in Perryton Wholesale, Inc. v. Pioneer Distributing Co., 353 F.2d 618 (1965).

In reaching his decision the Judge relied heavily upon the three above cited cases, each of which has been carefully analyzed by the undersigned.

In the *Pick-Barth* case the trial Court found that the defendant conspired to destroy the plaintiff as a competitor in interstate trade and that the conspiracy was a *per se* violation of Section 1 of the Sherman Act. Upon appeal the case was affirmed by an opinion of the First Circuit, which held that a conspiracy to eliminate a competitor in interstate trade by unfair means is a violation of Section 1 of the Sherman Act making proof of public injury unnecessary. *Pick-Barth, supra*, 57 F.2d at 102.

In the *Atlantic Heel* case, *supra,* the plaintiff likewise alleged that the defendant conspired to destroy plaintiff's interstate business by certain unfair trade practices. Upon motion the complaint was dismissed. The First Circuit reversed, citing *Pick-Barth,* and again held that a complaint charging a conspiracy to destroy a competitor by unfair trade practices states a claim of *per se* violation of Section 1 of the Sherman Act. However, two members of the Court expressed some doubt about the wisdom of announcing that principle as an absolute rule of law:

> Judge Aldrich and I concur in the result but see no occasion at this stage of the case to express wholehearted endorsement of the rule laid down by this court in Albert Pick-Barth v. Mitchell Woodbury Corp., 1 Cir. 1932, 57 F.2d 96, 102. It may be that the case is good law but it was unique on its facts in 1932 and so far as we can determine it stands alone today. At this stage of the instant case there is no need for us to commit ourselves definitely on the *Pick-Barth* rule. 284 F.2d at 884–885.

Finally, the District Judge in *Sauter* supports his opinion by relying upon the Tenth Circuit *Perryton* case, *supra.* In *Perryton* the trial Court found that there was a conspiracy to eliminate the plaintiff as a competitor in interstate trade by unfair means. On appeal the trial Judge was affirmed by an opinion which held that an unreasonable restraint on trade violative of Section 1 of the Sherman Act was established since the intent of the conspiracy was to eliminate the plaintiff as a competitor in interstate commerce. *Perryton, supra,* 353 F.2d at 622.

In *Pick-Barth, Atlantic Heel, Perryton* and *Sauter,* each plaintiff alleged and proved a conspiracy to either destroy a competitor in interstate commerce by unfair trade practices, or by use of unfair trade practices to impair the plaintiff's ability to compete in interstate commerce. No such allegations are made in the case at bar. Nor has du-Pont alleged, directly or indirectly, that the alleged conspiracy has injured the public or will in any way prejudice the public interest.

The first hearing in this cause was devoted to the issues of jurisdiction and duPont's prayer for a preliminary injunction. The hearing lasted some seven hours. The Court heard seven witnesses. The transcript consists of over 250 pages. Hutton's and Elwell's activities were delineated in detail. Thus the Court is not now considering the issue of jurisdiction upon bare-bone pleadings but has the benefit of testimony from witnesses for both sides in a full blown hearing.

Overly condensed, the evidence shows that duPont was attempting to reduce, by sale and consolidation, the number of its branch office operations in the municipalities of Palm Beach, Stuart, Fort Pierce and Vero Beach, Florida. In this effort duPont was represented by Elwell, who had been with duPont and its corporate predecessors in an executive capacity for more than 25 years.

For reasons of economy, duPont decided to close one of its several offices in Palm Beach and wanted to sell its offices at Vero Beach and Fort Pierce to Hutton. DuPont was relying upon Elwell to negotiate the sale and satisfactorily explain the closing of one of the Palm Beach offices to duPont's employees in Palm Beach. The sale and purchase of the Fort Pierce and Vero Beach office to Hutton was consummated. About the time that one of the Palm Beach offices was closed, Elwell and a substantial number of duPont's employees left duPont's employment and were employed by Hutton, which had then opened its own office in Palm Beach and had established offices at Fort Pierce and Stuart. It appears that the Hutton office in Stuart was being set up and equipped just prior to the employee migration.

Along with the sudden and unexpected departure of its employees, including Elwell, duPont lost most of its account

books and other records, which went with the employees. These records have since been returned. There is evidence that Elwell met surreptitiously with a large number of duPont's employees to discuss their employment by Hutton and to view a Hutton promotional film, at a time when Elwell and the others were in the employ of duPont. Hutton representatives were in attendance. Elwell and the other employees of duPont who transferred to Hutton testified that they left duPont because they disapproved the closing of one of duPont's offices in Palm Beach and because they were apprehensive about duPont's security and the security of their jobs. They claimed that they were not induced to leave duPont and to take employment with Hutton by anything that Elwell did or did not do. In fact, he and they testified that defendant Elwell was in no way disloyal to duPont.

No effort is being made here to do anything more than barely outline the evidence so that this Court's ruling upon its jurisdiction may be understood. We are not here concerned with the contractual rights and duties of the parties, or whether there was tortious interference with duPont's business. We are concerned only with whether Hutton and Elwell conspired to impose an unreasonable restraint upon the interstate trade or commerce of duPont in a way to violate the Sherman Act. If such a conspiracy existed this Court has jurisdiction to proceed; if not, duPont has a claim which may be submitted to the New York Stock Exchange for arbitration, or duPont may proceed in an appropriate state court, but not here.

There is not the slightest suggestion of price fixing, division of markets, group boycotts, tying arrangements, or any other *per se* antitrust activity, except allegations and some proof that Hutton and Elwell conspired to injure duPont in its business by pirating duPont's employees, the removal of duPont's account books and other acts interfering with duPont's branch operations at Palm Beach and the other communities. This Court finds and concludes that Hutton and Elwell's alleged conspiracy does not rise to the level of a *per se* violation of Section 1 of the Sherman Act.

If the alleged activity of Hutton and Elwell is not a *per se* violation, it is not actionable under the Sherman Act unless it is alleged and proved to be an undue or unreasonable restraint upon plaintiff's interstate trade or commerce which prejudiced the public interest. The Fifth Circuit has repeatedly held that in order for conduct to unreasonably restrain trade or commerce within the meaning of the Sherman Act, it must tend or be reasonably calculated to prejudice the public interest. Rogers v. Douglas Tobacco Board of Trade, Inc., 266 F.2d 636, 644 (5th Cir. 1959).

More recently, in Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., 383 F.2d 97 (5th Cir. 1967), the Fifth Circuit held:

> When the factual situation does not present a per se violation, before a violation may be found, it must be determined that the activity unreasonably restrains trade. If it is not unreasonble it is not a violation. The only way in which to determine whether an activity is unreasonable is to apply the test of injury to the public as part of the broader test of the rule of reason. *Cherokee, supra,* at 104.

In the case at bar there is no allegation of injury to the public; nor was there any evidence of public injury, nor any evidence from which public injury may reasonably be inferred, notwithstanding that an extensive hearing has been conducted upon the issue of this Court's jurisdiction. This is a controversy between two giants in the stock brokerage business which is private in nature, not public. It is private in the sense that duPont is contending that in the communities mentioned it has been the victim of tortious acts on the part of

Hutton and Elwell, including tortious interference with duPont's business by proselytizing duPont's employees, confiscating duPont's account books and other records and a tortious effort to take over duPont's patrons.

 However, Hutton's alleged activities, arising as they did from duPont's effort to negotiate a sale of its offices in Fort Pierce and Vero Beach to Hutton and to eliminate one of its Palm Beach offices through a consolidation of offices, has not established an unreasonable restraint upon duPont's interstate trade and commerce in a way to cause public injury and to be actionable as a violation of the Sherman Act. If duPont is permitted to prosecute this claim as a violation of the Sherman Act, it would be difficult to envision any alleged tort on the part of one stock broker against another which could not be prosecuted in the federal court as a Sherman Act violation. This is certainly not what Congress intended and is impermissible under the body of antitrust law which has developed.

Since the jurisdiction of this Court has not been sufficiently alleged by the amended complaint or demonstrated by the evidence, there is no reason to believe that this Court's jurisdiction can later be established. This being so, a further delay in the dismissal of this cause for lack of jurisdiction would simply consume time that duPont could well utilize for prosecution of its tort claim against Hutton and Elwell in an appropriate forum. DuPont's claim must either be submitted to arbitration pursuant to the contractual obligation of the parties, or, if arbitration is not mandatory, presented for resolution to an appropriate state court.

For the reasons stated, this cause is dismissed for lack of jurisdiction, without prejudice to duPont's right to prosecute its claim against defendants Hutton and Elwell in another forum.