STIFEL, NICOLAUS & COMPANY, INCORPORATED, a corporation, Plaintiff,

v.

DAIN, KALMAN & QUAIL, INCORPORATED, a corporation, et al., Defendants.

No. C 75–52.

United States District Court, N. D. Iowa, Cedar Rapids Division.

April 28, 1977.

John D. Randall, Cedar Rapids, Iowa, John H. Lashly, and Paul B. Rava, St. Louis, Mo., for plaintiff.

William L. Meardon, Thomas D. Hobart, Iowa City, Iowa, for defendant Gene Brawner.

James W. Hall, Cedar Rapids, Iowa, James H. O'Hagan, Peter S. Hendrixson, Minneapolis, Minn., for all defendants.

McMANUS, Chief Judge.

This matter is before the court on defendants' resisted motions seeking dismissal, summary judgment, or an order to arbitrate, all filed March 3, 1977.

Plaintiff Stifel, Nicolaus & Company, Inc. (Stifel) has brought this action against defendant Dain, Kalman & Quail, Inc. (DKQ) for alleged violations of §§ 1 and 2 of the Sherman Act[1] and for engaging in unfair trade practices, a common-law tort theory. Jurisdiction over the Sherman Act claims is undisputed. Pendent jurisdiction is invoked as to the state law tort claim.

Defendants again[2] move to dismiss plaintiff's Sherman Act claims for failure to state a claim upon which relief can be granted. Additionally defendants move for summary judgment on Count II of plaintiff's claim which is predicated upon § 2 of the Sherman Act. Finally, defendants moved the court in lieu of dismissal to stay the Sherman Act claims pending arbitration of the unfair competition matter pursuant to the rules of the New York Stock Exchange, an organization to which both parties are bound by membership.

In the setting of facially non-frivolous claims of anti-trust violations arising out of the same set of facts allegedly constituting unfair competition the court is disinclined to order arbitration. The antitrust issues raised by the pleadings and contested by motions to dismiss and for summary judgment are inappropriate for commercial arbitration but should be decided by this court. See e. g., Gutor International A. G. v. Raymond Packer Co., Inc., 493 F.2d 938, 948 n. 17 (1st Cir. 1974); Cobb v. Lewis, 488 F.2d 41, 47 (5th Cir. 1974); American Safety Eqpt. Corp. v. J. P. Maguire & Co., 391 F.2d 821, 828 (2d Cir. 1968). See also Helfenbein v. International Industries, Inc., 438 F.2d 1068, 1070 (8th Cir. 1971).

The standards for dismissal and summary judgment set the backdrop against which

---

1. The relevant portions of the Sherman Act, 15 U.S.C. §§ 1, 2, state:

   § 1 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states . . . is declared to be illegal. § 2 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states . . . shall be deemed guilty of a felony. . . .

2. Defendants moved previously on October 14, 1975, to dismiss or, in the alternative, to stay plaintiff's cause of action. The court, on December 24, 1975, denied those motions.

the facts of the case are judged. These related legal theories are substantially congruent. Thus under both theories there is a strong presumption against granting the motions.

■ Motions to dismiss are contraindicated unless it appears to a certainty that plaintiff is entitled to no relief under any set of facts which would be proved in support of the claim. *See, e. g., Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Motions for summary judgment are unavailing unless there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(c) FRCP; *see Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In the case of either motion the court is required to construe the facts in the light most favorable to the party opposing the motion. *Compare Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) *and United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) *with Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) *and Park View Heights Corp. v. City of Black Jack,* 467 F.2d 1208, 1212 n. 3 (8th Cir. 1972). The only perceived difference is the measure of factual scrutiny; in a motion to dismiss all well pleaded facts are taken as true, in a motion for summary judgment the opposing party is only given the benefit of all reasonable inferences to be drawn from those facts. *Id.* In either case it is apparent that the burden on DKQ is particularly heavy.

### Motion to Dismiss Count I

The following facts are taken as true in accordance with the forementioned standards. Plaintiff corporation was at all times material a brokerage firm providing investment services in the Middle West region with offices situated in Cedar Rapids, Iowa and Iowa City, Iowa. Defendant Dain, Kalman & Quail, Inc. (DKQ) was at all times material a brokerage firm with an office located in Cedar Rapids, and was a competitor of plaintiff and a dominant factor in the brokerage and investment services business in that locality. Defendant Fischer was chairman of the board and chief executive officer of DKQ and its holding company, defendant Inter-Regional Financial Group, Inc. Defendants Stamp, Brawner and Jackson were registered representatives and employees of plaintiff Stifel.[3]

Commencing prior to August 25, 1975, the defendants conspired together to lessen and eliminate competition of plaintiff company in the brokerage business in the Cedar Rapids-Iowa City area. To effectuate said conspiracy, Brawner and Jackson precipitously terminated their employment with plaintiff and immediately commenced employment with DKQ. Prior to leaving Stifel, Brawner and Jackson together with the other defendants induced and enticed all of plaintiff's employees, from manager to secretary, to leave plaintiff's employ and become employees of DKQ. The departure of the complete staff effectively closed down plaintiff's offices in Cedar Rapids and Iowa City. Brawner, Jackson and Stamp began to solicit future patronage for DKQ while still employed by plaintiff. The three former employees of plaintiff also delivered to DKQ copies of certain confidential business records belonging to plaintiff.

Plaintiff maintains that these facts establish a conspiracy among the defendants to eliminate plaintiff as a competitor and that such conduct constitutes unfair competition and an unreasonable restraint of trade, and thus is violative of § 1 of the Sherman Act. The court, initially persuaded that the complaint sufficiently alleged the essential elements of an antitrust claim under § 1 to withstand a motion to dismiss, tentatively

---

3. Defendants Stamp and Brawner were additionally vice presidents and branch managers of Stifel.

agreed in a previous order.[4] The conclusions reached in that order are now withdrawn.

The court in the previous order canvassed the essential elements of a viable treble damage action under § 1. Because most of these elements are not implicated in the decision to grant defendants' motion to dismiss, it is necessary only to allude to them.

To state a claim upon which relief can be granted under § 1 of the Sherman Act "allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all that the law requires". *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.,* 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961); *Knuth v. Erie-Crawford Dairy Coop. Ass'n,* 395 F.2d 420, 423 (3d Cir. 1968). Stifel clearly has satisfied the requirement that it show that it was damaged. The requisites of violation, therefore, need be addressed.

A sufficient nexus with interstate commerce to trigger application of the Act is perhaps the threshold consideration. The multistate character of the corporate parties, their regional competitive status, the subject matter of the alleged conspiracy, brokerage of securities and similar investments on local and national exchanges all indicate a sufficient connection between the activities complained of here and interstate commerce to invoke Sherman Act analysis. *See United States v. Bensinger Co.,* 430 F.2d 584, 588–89 (8th Cir. 1970); *Cook v. Ralston Purina Co.,* 366 F.Supp. 999, 1009–1010 (M.D.Ga.1973).

A conspiracy or combination in restraint of trade must be found. The interaction among defendants Stamp, Brawner, Jackson and DKQ at a time when the individual defendants were in the employ of Stifel constitutes conspiracy within the meaning § 1. *See C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.,* 368 F.Supp. 501, 510 (E.D.Pa.1973); *Beacon Fruit & Produce Co. v. H. Harris & Co.,* 152 F.Supp. 702, 704–05 (D.Mass.1957).

The question remaining concerns whether plaintiff has averred such facts and circumstances as can be reasonably considered to imply a conspiracy "in restraint of trade or commerce". Although the proscription of conspiracies in restraint of trade or commerce is literally all-encompassing, "the courts have construed it as precluding only those contracts or combinations which 'unreasonably' restrain competition. *Northern Pac. Ry. v. United States,* 356 U.S. 1, 4–5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *see United States v. American Tobacco Co.,* 221 U.S. 106, 179, 31 S.Ct. 632, 55 L.Ed. 663 (1911); *Standard Oil Co. v. United States,* 221 U.S. 1, 59–68, 31 S.Ct. 502, 55 L.Ed. 619 (1911). The "rule of reason" requires that the restraint of trade affect market prices or otherwise deprive consumers of the advantages of free competition. *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 500–501, 60 S.Ct. 982, 84 L.Ed. 1311 (1939).

There is, however, a rather amorphous category of activities and commercial practices in restraint of trade that are so inimical to competition or so frequently impede the free flow of commerce that they are presumed unreasonable. Commercial conduct held to be in the forbidden category as per se unreasonable include price fixing agreements, *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries Co.,* 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927), group boycotts, *Klor's, Inc. v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Fashion Originators Guild of America v. F.T.C.,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941), and patent-related tying arrangements. *International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

Establishing the applicability of a per se rule to the alleged anticompetitive conduct obviates the need to show any particular impact on interstate commerce since it is presumed as a matter of law. *United*

4. See note 1 *supra.*

*States v. Bensinger Co.,* 430 F.2d 584, 588 (8th Cir. 1970).

It is conceded that plaintiff has alleged no impact on interstate commerce in conformance with the rule of reason. Plaintiff does rely, however, on a line of cases, the *Pick-Barth* line of cases, that seemingly hold that a conspiracy to eliminate a competitor in interstate commerce or destroy that competitor's ability to compete is a per se violation of § 1 of the Sherman Act. Since the court considers that the validity of defendants' motion to dismiss Count I turns on the viability of the *Pick-Barth* per se rule, an in-depth examination of cases applying or rejecting the rule is indicated.

The seminal case in the formation of the rule is *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir. 1932). There the defendant corporation dealing in china, glassware, kitchen utensils and equipment, and constituting the "largest and a dominating factor" in that business in the United States, conspired with trusted employees of plaintiff corporation, its largest competitor in a particular section of the country, to destroy plaintiff's business. This intended result was accomplished by unfair competition—inducing plaintiff's employees to leave their employ taking with them customer lists, cost records, and other vital documents, conspiring with plaintiff's employees to secretly solicit plaintiff's customers on behalf of defendant, and so on.

Despite the absence of a finding of an unreasonable restraint of trade,[5] the court affirmed a finding of violation of § 1 of the Sherman Act, citing *United States v. Trenton Potteries Co.*[6]

The First Circuit reiterated the *Pick-Barth* rule in *Atlantic Heel Co. v. Allied Heel Co.,* 284 F.2d 879 (1960), although certainly not unequivocally,[7] in a similar context of employee enticement, trade secret pirating, and other unfair practices.

*Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kan.,* 353 F.2d 618 (10th Cir. 1965) has usually been attributed to be the penultimate in the *Pick-Barth* line. The factual context was the now-familiar conspiracy to solicit and use plaintiff's employees to acquire plaintiff's business for the defendant. The Tenth Circuit without a specific finding of public injury, upheld the finding of the lower court that the conduct involved there—elimination of a competitor that was predominant in the market by subversion of its employees—amounted to a violation of § 1 of the Sherman Act. *See Perryton, supra,* at 622. *Pick-Barth* and *Atlantic Heel* were cited as direct authority.

The final unqualified application of *Pick-Barth* was *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.,* 368 F.Supp. 501 (E.D.Pa.1973). The court there was in a posture of considering a number of post-trial motions after the jury had rendered a verdict for the plaintiff on its § 1 claim. The key factual finding most relevant to the context here was that the defendants solicited, hired, or frightened away plaintiff's key employees for the purpose of eliminating plaintiff as a competitor. *Id.* at 506. The court rejected defendants' attempt to distinguish *Pick-Barth* on the basis of relative market control, *id.* at 512, and employed the *per se* unreasonableness analysis.

---

**5.** The jury found that " 'the acquisition of the plaintiff's business did not effect an unreasonable restraint of trade' ". *Pick-Barth, supra,* at 102.

**6.** The *per se* rule articulated by the court in *Pick-Barth* was a fairly narrow one: "[W]e think it is not necessary to show an unreasonable restraint of interstate trade as an accomplished fact, if a conspiracy is proved, the intent and purpose of which, if carried out, would eliminate *the largest competitor of one of the conspirators in a particular section of the country,* which competitor *controlled a substantial*

part of the trade in that section, and one of the methods of suppressing such competition was unlawful or unfair competition." *Pick-Barth, supra,* at 102 (emphasis supplied).

**7.** Although Judge Hartigan seemed to broaden the cincture of the rule by belittling the importance of the corporate size of Pick-Barth in the application of the rule, *Atlantic Heel Co., supra* at 881, the two remaining judges of the panel, JJ. Woodbury and Aldrich, expressed reservations about extending a rule based on a case "unique on its facts". Id. at 885.

The *Pick-Barth* per se rule remained the prevailing rule, although infrequently invoked, until the First Circuit had occasion to re-examine its desirability in *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1974).[8]

*Whitten* undeniably is a re-evaluation of the *Pick-Barth* rule.[9] The case arose out of a concerted course of conduct by defendant that the court deemed unfair competitive practices and clearly offensive. Lacking any evidence whatever of harm to general competition in the market, *id.* at 562, the court considered the applicability of a *per se* rule:

> Insofar as *Pick-Barth* and *Atlantic Heel* may be said to stand for the broad proposition that unfair competitive practices accompanied by an intent to hurt a competitor constitute per se violations of

the antitrust laws, we do not now accept their teaching. We do not feel it necessary to criticize their results on the fact situations there presented—an effort by a defendant which was a significant factor in the market to eliminate a competitor.

The *Pick-Barth* per se rule is, thus, arguably confined to those situations in which it is alleged that a conspiracy in restraint of trade involving a significant factor in the market utilized unfair means of competition with the intent not just to hurt a competing enterprise but to completely destroy or eliminate that competitor from the market. *See Tower Tire & Auto CTR, Inc. v. Atlantic Richfield Co.*, 392 F.Supp. 1098, 1104–05 (S.D.Texas 1975).

This is the situation that the court now confronts. Plaintiff carefully alleges in the

---

**8.** Predating, and perhaps portending, the results reached by the First Circuit in *Whitten* were a number of court decisions giving some attention to the *Pick-Barth* rule. *Vogue Instrument Corp. v. Lem Instruments Corp.*, 40 F.R.D. 497 (S.D.N.Y.1966) involved allegations of inducing plaintiff's employees to solicit customers for defendant, inducing plaintiff's employees to breach their employment contracts, pirating of plaintiff's drawings, customers' names, and so on. The relevant division of plaintiff company was threatened with an entire loss and destruction of its business. *Id.* at 498. Although Judge Frankel opined that the conduct involved amounted to a garden variety of unfair competitive practices normally reached under state rather than federal law, summary judgment was denied on the basis of the need to develop a broader factual record to determine whether the *Pick-Barth* rule need apply in the first place.

*Frederick Chusid & Co. v. Marshall Leeman & Co.*, 326 F.Supp. 1043 (S.D.N.Y.1971) concerned unfair competitive practices between two competing businesses offering counseling services to business executives. The court refused to apply *Pick-Barth,* asserting that the enticement of plaintiff's employees, the pirating of trade secrets, and so on was visited upon plaintiff for the purpose of *establishing* a competitor and not *eliminating* a competitor. *Id.* at 1063.

In *duPont Walston, Inc. v. E. F. Hutton & Co.*, 368 F.Supp. 306 (S.D.Fla.1973), the court avoided applying the *Pick-Barth* rule to a conspiracy effecting an en masse employee migration from plaintiff to defendant, stating: "In *Pick-Barth, Atlantic Heel, Perryton* and *Sauter,* each plaintiff alleged and proved a conspiracy

to either destroy a competitor in interstate commerce by unfair trade practices, or by use of unfair trade practices to impair the plaintiff's ability to compete in interstate commerce. No such allegations are made in the case at bar." *Id.* at 308. Thus, in the absence of an allegation of public injury the court would not find defendant's actions to be a violation of the Sherman Act.

The Eighth Circuit has had occasion to consider *Pick-Barth* in passing. *Metal Lubricants Co. v. Engineered Lubricants Co.*, 411 F.2d 426 (1969) affirmed the district court's determination that no conspiracy utilizing unfair means of competition had been established within the meaning of § 1 of the Sherman Act. The court, contrasted the rule establishing the right of employees to terminate their employment and enter into fair competition with "the law forbidding former employees conspiring to induce others to quit their employer for the express purpose of eliminating their former employer as a competitor. *National Rejectors* embodies the first rule, *Perryton* the second."

The most that can be said about the precedential value of *Metal Lubricants* with respect to application of the *Pick-Barth* rule is that *Metal Lubricants* in dicta recognized it but did not approve or apply it.

**9.** Some courts have gone so far as to maintain that *Whitten* overruled or substantially undermined *Pick-Barth* and *Atlantic Heel. See, e. g., Craig v. Sun Oil Co. of Pennsylvania*, 515 F.2d 221, 223–24 (10th Cir. 1975) (dicta); *G. C. E. v. Motorola Commun. & Elec.*, 421 F.Supp. 274, 288–89 (N.D.Cal.1976); *Southland Reship, Inc. v. Flegel*, 401 F.Supp. 339, 347 (N.D.Ga.1975).

instant case DKQ's position as a significant factor in the market, and further alleges a conspiracy with an intent to destroy or eliminate plaintiff as a competitor. As indicated, plaintiff does not allege public injury. Taking all of plaintiff's factual allegations as true and applying the *Pick-Barth* rule plaintiff's § 1 claim would suffice to withstand dismissal. It does not do so here because the court is reluctant to apply a per se rule to this conduct.

■■■ The reluctance to apply a per se rule here is based on two principles: first, in the absence of egregious anti-competitive impact and in the absence of a Supreme Court pronouncement on the matter, per se rules are to be rarely invoked; second, the Sherman Act is not to serve as a remedy to all torts affecting interstate commerce nor is it to serve as a general purpose law prohibiting unfair trade practice.[10]

■■ This court joins other courts in viewing with trepidation a per se rule that is based on a hazy distinction between intent to harm and intent to destroy.[11] *See Mar Food Corp. v. Doane*, 405 F.Supp. 730, 731 (N.D.Ill.1975); *Southland Reship, Inc. v. Flegel*, 401 F.Supp. 339, 347 (N.D.Ga.1975). This distinction is an unrealistic one and patently unworkable.[12] The court can envision scenarios under such a rule whereby legal counsel advise corporations contem-

10. *See, Boone, Single-Corporation Competitive Torts* and the *Sherman Act*, 2 Ga.L.Rev. 387 (1968); *Note, Unfair Competition Under the Sherman Act: C. Albert Sauter Co. v. Richard S. Sauter Co.* and the *Pick-Barth* Rule, 59 Iowa L.Rev. 1206 & n. 145, 1212 (1974); *cf. duPont Walston v. E. F. Hutton*, 368 F.Supp. 306, 310 (S.D.Fla.1973).

11. The *Whitten* court characterized this difference as perhaps only that between going to the jugular and going to one of the lesser arteries. *Whitten, supra,* at 562. Although the court expressed an intention to adhere to this distinction, the *Whitten* opinion read as a whole is equivocal support for the *Pick-Barth per se* rule. Thus, for example, the *Whitten* court noted that *per se* rules are ordinarily formulated in the context of cases presenting some ascertainable market power and which "often concern giants in an industry which have been charged with now classic forms of distorting market conditions. . . ." *Whitten, supra,* at 559. The court added later:

We have in mind also the criticism voiced . . . of our failure to define with any precision the practices held to be a per se violation. More generally, we are impressed by reflecting on the carefully selected considerations which have gone into the declaring of a few practices as per se violations, the danger of casual extension of the category, the value of prior case experience, the availability of the law of torts to deal with such issues as interference with contractual relations and interference with prospective advantage, not to forget the availability of the Federal Trade Commission Act.

These points underscore the court's reluctance to apply a per se rule here. The formulation in *Pick-Barth* of a per se rule respecting two market giants does not apply to the instant case. The court considers the extension of the per se rule from the situation in *Pick-Barth* of

"the largest and dominant factor" attempting to eliminate its "largest competitor" to the situation in *Atlantic Heel* where a consideration of intercorporate dimensions was "not . . . crucial to the court's analysis" to be, though not casual, unwarranted. The value of prior case experience and the availability of alternative remedies such as tort sanctions, two of the impressions delineated in *Whitten,* further support this court's approach.

The uncertain posture of *Whitten* is compounded by what appears to be retrenchment by the Tenth Circuit on *Perryton*. Thus, in *Craig v. Sun Oil Co. of Penn., supra,* at 223–24, the court stated: "We do not consider *Perryton Whoesale, Inc. v. Pioneer Distributing Co. of Kansas*, 353 F.2d 618 (10th Cir.) to be applicable to this case, as the court was there concerned with a particular type of business activity which is not present here. Reference is made in the *Perryton* opinion to existing competition, *and it is not necessarily a per se case despite citation of the First Circuit cases.* (emphasis supplied).

12. See, for example, the court's attempts to adopt a meaningful standard in *Tower Tire & Auto C T R, Inc. v. Atlantic Richfield Co.,* 392 F.Supp. 1098 (S.D.Texas 1975). The court found insufficient to trigger per se analysis a standard proscribing a conspiracy "calculated to cause a substantial decline in the ability of the existing competitor to compete" but accepted as per se violative conspiracy together with a "finding that the intent of the defendants was *effectively* to eliminate plaintiff from the relevant market". *Id.* at 1107 (emphasis supplied). The court is reluctant in the instant case to adopt a per se approach under the above standard when it is so difficult to determine the scope of that nebulous "intent . . . effectively to eliminate".

plating large scale employment of an opposing company's employees, such as here, to leave two or three behind so as to avoid the appearance of an intent to destroy. The seeming absence of an ability to show market impact indicates that this is not the stuff anti-trust is made of. It might be the logical object of an unfair trade practices law, but as indicated, the Sherman Act is not such a law.

## Motion to Dismiss or Motion for Summary Judgment on Count II

The court now considers whether the facts as stated by Stifel, and all reasonable inferences to be drawn from those facts under § 2 of the Sherman Act are sufficient to withstand either defendants' motion to dismiss or defendants' motion for summary judgment. The court has examined all briefs and affidavits accompanying the motions;[13] summary judgment will now be entered in favor of DKQ.

In Count II of its complaint plaintiff has alleged monopolization or attempted monopoly by DKQ.

■ Monopolization, as defined by anti-trust case law, consists of two elements:

1) the possession of monopoly power in the relevant market and

2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

Stifel's monopolization claim fails in the first instance—possession of monopoly power by DKQ in the relevant market.

■ Monopoly power has long been defined as "the power to control market prices or exclude competition". *See, e. g., United States v. Grinnell Corp., supra,* at 571, 86 S.Ct. at 1704; *United States v. Griffith,* 334 U.S. 100, 105, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); *American Tobacco Co. v. United States,* 328 U.S. 781, 811, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). The existence of monopoly power may be inferred from a predominant share of the market, *United States v. Grinnell Corp., supra,* at 571, 86 S.Ct. 1698, but the size of the share depends on the relevant market.

■ Assuming for the purpose of this motion that plaintiff's averment of the Cedar Rapids-Iowa City area as the relevant market is true, the uncontested affidavit of defendant Daryl Stamp, a registered representative in the brokerage and securities business in the area, establishes that DKQ's market share, based on the number of registered representatives in the area and on the ready availability of investment services from businesses in geographical proximity, is less than thirty per cent. Plaintiff offers no counter affidavit as to market share and has alleged no actual ability to exclude competition or control prices in the area of DKQ.[14] In the absence of such showings or allegations the court finds, as a matter of law, that less than a thirty per cent share in this rather narrowly circumscribed market is insufficient monopoly power for purposes of § 2 of the Sherman Act. See *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 974–75 (8th Cir. 1968) *cert. denied* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

Plaintiff's attempted monopoly claim is also deficient. Stifel must show that DKQ possessed a "specific intent to monopolize and a dangerous probability of success

---

13. Initially it should be noted that the court has inferred plaintiff's resistance to defendants' motion for summary judgment on the § 2 claim. An equally reasonable inference would be that plaintiff does not so resist since it has not briefed the question in any but the most general fashion and has not controverted key affidavits submitted by defendants in that regard.

14. It appears to be the case, uncontroverted by plaintiff, that during the time that the alleged unfair trade practices took place the New York Stock Exchange "controlled" most of the prices and commissions.

within [the] relevant product and geographic market". *United States v. Empire Gas Corp.*, 537 F.2d 296, 298–99 (8th Cir. 1976) *cert. denied,* —— U.S. ——, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977). *See Agrashell, Inc. v. Hammons Products Co.,* 479 F.2d 269, 284–85 (8th Cir. 1973) *cert. denied* 414 U.S. 1022, 1032, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973). The court concludes as a matter of law that Stifel can neither show a dangerous probability of success, an element of attempted monopolization which was not pled, *see Mackey v. Sears, Roebuck & Co.,* 237 F.2d 869, 873 (7th Cir. 1956) *dismissed per stipulation,* 355 U.S. 865, 78 S.Ct. 114, 2 L.Ed.2d 70 (1957), nor can it show a specific intent to monopolize. *See G.C.E. v. Motorola, supra,* at 293.

It is therefore

ORDERED

1. Defendants' motion to dismiss Count I granted.

2. Defendants' motion for summary judgment as to Count II granted.

3. Count III of plaintiff's complaint dismissed in the exercise of the court's discretion for lack of an underlying federal issue.