578 F.2d 1256
 1978-1 Trade Cases 62,094
 STIFEL, NICOLAUS & COMPANY, INCORPORATED, a corporation, Appellant,
v.
DAIN, KALMAN & QUAIL, INCORPORATED, a corporation,
Inter-Regional Financial Group, Inc., a
corporation, Robert W. Fischer, Daryl
Stamp, Gene Brawner and Jack
Dean Jackson, Appellees.
 No. 77-1755.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1978.
Decided June 15, 1978.
 
 John H. Lashly, St. Louis, Mo., for appellant; Kenneth C. Brostron and James J. Hennelly, St. Louis, Mo., on the brief.
 James H. O'Hagan, Minneapolis, Minn., for appellees; Peter S. Hendrixson and J. Marquis Eastwood, Minneapolis, Minn., and James W. Hall, Cedar Rapids, Iowa, on the brief.
 Before ROSS and HENLEY, Circuit Judges, and LARSON, Senior District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an appeal by an unsuccessful plaintiff in an antitrust and unfair competition suit that was filed in September, 1975 in the United States District Court for the Northern District of Iowa.
 
 
 2
 The complaint was in three counts. The first count charged that the several defendants had violated § 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1; the second count charged a violation of § 2 of the Sherman Act, 15 U.S.C. § 2; and the third count charged that the defendants had been guilty of common law unfair competition and tortious interference with relations between the plaintiff and three of its key employees.[1] Jurisdiction of Counts I and II was based on 15 U.S.C. § 15; jurisdiction of Count III was pendent, although it might well have been based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a).[2]FN 1. Section 1 of the Sherman Act provides that every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states or with foreign nations is illegal.
 
 
 3
 Soon after the complaint was filed, the defendants filed a motion to dismiss it. That motion was denied in an order accompanied by an unpublished memorandum opinion filed on December 24, 1975. The defendants answered, and the case progressed toward trial readiness throughout 1976 and was set for trial in the spring of 1977. However, in March of that year the defendants filed another motion to dismiss the complaint and an alternative motion for summary judgment.
 
 
 4
 Those motions came before the district court in late April, 1977, and as of that time the court was of the opinion that the position of the defendants was well taken, and that the motions should be granted. Accordingly, the complaint was dismissed in its entirety. Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., 430 F.Supp. 1234 (N.D.Iowa 1977).
 
 
 5
 Plaintiff filed a timely motion for reconsideration and prayed that the judgment of the district court be set aside and that the case proceed to trial on the merits. In August, 1977 the district court denied that motion with the qualification that leave would be granted to plaintiff to amend Count III of the complaint so as to allege diversity jurisdiction, but the district court stipulated that if such an amendment was filed, plaintiff would have to arbitrate its common law claim in accordance with the rules of the New York Stock Exchange (NYSE).
 
 
 6
 Within the time allowed by the district court plaintiff filed an amended complaint in which it sought to reallege its antitrust claims and in which it alleged diversity jurisdiction with respect to Count III and increased the amount of damages claimed in that count to an amount equal to the treble damages claimed under the antitrust counts.
 
 
 7
 Before any action was taken by the district court with respect to that amendment, plaintiff filed its notice of appeal.[3]
 
 
 8
 Background facts of the case are not disputed.
 
 
 9
 Plaintiff, Stifel, Nicolaus & Company, Incorporated (Stifel), is a Missouri corporation with its principal place of business being located in the City of St. Louis. The corporate defendant, Dain, Kalman & Quail, Incorporated (Dain), is a Delaware corporation with its principal place of business being located in Minneapolis, Minnesota; it is wholly owned by the other corporate defendant, Inter-Regional Financial Group, Inc., which is a holding company organized under Delaware law and with its principal place of business being Minneapolis. The defendant Robert W. Fischer, a citizen of Minnesota, is the principal executive officer of both of the corporate defendants. The individual defendants, Daryl Stamp, Gene Brawner and Jack Dean Jackson, are all citizens of Iowa. They are all employees of Dain and formerly were employed by Stifel.
 
 
 10
 Stifel and Dain are competitors in interstate commerce in the securities brokerage business. Both are members of NYSE and are subject to its rules. Prior to September 3, 1975 Stifel and Dain both maintained branch offices in Iowa City and Cedar Rapids, Iowa, which are about seventeen miles apart; Cedar Rapids is the larger of the two cities. Since the date just mentioned Dain has continued to operate an office in both Cedar Rapids and Iowa City, and plaintiff has operated an office in the latter city.
 
 
 11
 In September, 1975 the individual defendants, Stamp, Brawner and Jackson, were all key employees of plaintiff in its Iowa offices. Stamp was the manager of the Iowa City office and was also manager of the Cedar Rapids office which he had established in 1973. All three of those individuals were account executives and were registered with the Securities and Exchange Commission as representatives of plaintiff. All had been trained by Stifel, and Stamp was a vice president of Stifel. All had access to records and confidential information that belonged to Stifel. Presumably, all three men had built up personal good will between themselves and customers of Stifel with whom they dealt.
 
 
 12
 On September 3, 1975 Stamp, Brawner, Jackson and all other employees of Stifel in Iowa City and Cedar Rapids quit their jobs without notice and went to work for Dain. Stamp, Brawner and Jackson took with them copies of records of customer accounts and began to solicit customers of Stifel to transfer their business to Dain. The immediate effect of the actions just described was the disruption of the business of Stifel in both Iowa City and Cedar Rapids. It seems that both offices were closed initially; the one in Iowa City was reopened and is functioning today; the one in Cedar Rapids has never been reopened.
 
 
 13
 This suit was filed on September 22, 1975. It was and is the theory of the plaintiff that the defection of its employees was the result of a conspiracy involving all six defendants. Plaintiff estimated its actual damages at $1,500,000.00, and it sought recovery of that sum in Count III of the complaint, the common law claim. Plaintiff sought treble damages ($4,500,000.00) in Counts I and II.[4]
 
 
 14
 In their original motion to dismiss, the defendants alleged that the district court lacked subject matter jurisdiction and that the complaint did not state a claim upon which relief could be granted. Alternatively, defendants moved that proceedings be stayed and that the dispute between Stifel and Dain be arbitrated as required by the rules of NYSE.
 
 
 15
 While Count I of the complaint contained a general allegation that the conspiracy among the defendants was an "unreasonable" restraint on interstate commerce, the basic position of the plaintiff in resisting the defendants' motion was that the conspiracy was designed to eliminate plaintiff as a competitor in the Cedar Rapids-Iowa City area, and was a per se violation of § 1 of the Sherman Act under the rule laid down in Albert Pick-Barth Co. v. Mitchell Woodbury Corp., 57 F.2d 96 (1st Cir.), Cert. denied, 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932), as limited by George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547 (1st Cir. 1974), Cert. denied, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).
 
 
 16
 While § 1 of the Sherman Act in terms prohibits all combinations and conspiracies in restraint of interstate or foreign trade or commerce, the scope of the Act has been narrowed by judicial construction to combinations or conspiracies which "unreasonably" affect trade or commerce in the sense that they violate the "rule of reason" which has long been recognized in antitrust cases. See, e. g., Northern Pacific R. Co. v. United States, 356 U.S. 1, 4-5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), and Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The rule of reason requires that the restraint in question affect market prices or otherwise deprive the consuming public of the benefits of free competition. Apex Hosiery Co. v. Leader, supra, 310 U.S. at 500-01, 60 S.Ct. 982, and cases cited.
 
 
 17
 There are, however, certain business combinations and practices that are so pernicious and so devoid of redeeming attributes that they are considered to be unreasonable restraints on interstate or foreign commerce per se. If a businessman is injured as a result of a per se violation of § 1 of the Sherman Act, he need not allege or prove any particular effect or impact of the violation on interstate or foreign commerce; the existence of such an effect or impact is conclusively presumed. United States v. Bensinger Co., 430 F.2d 584, 588 (8th Cir. 1970). Certain categories of per se violations are well defined and include price fixing, group boycotts, and certain types of tying agreements. See the opinion of the district court, 430 F.Supp. at 1238, and cases cited.
 
 
 18
 The Pick-Barth rule, as limited by Whitten, supra, is that a per se violation of § 1 occurs where a significant competitor in interstate or foreign commerce enters into a conspiracy to destroy completely or eliminate from competition a competitor by means of unfair trade practices including the luring away of key employees with the usual concomitants of such luring.
 
 
 19
 When the original motion to dismiss came before him, the district judge thought that Count I of the complaint alleged a per se violation of § 1 under the narrowed Pick-Barth rule. He also felt that no direct attack on Count II had been made. Accordingly, as stated, the judge denied the motion to dismiss the first two counts of the complaint and retained pendent jurisdiction of Count III.
 
 
 20
 However, by the time the second motion to dismiss and the alternative motion for summary judgment came before him in 1977, the judge had reconsidered the Pick-Barth rule and refused to apply it to Count I. He also thought that Count II did not present any genuine issue as to any material fact, and that the defendants were entitled to summary judgment. In that situation he did not consider that jurisdiction of Count III should be retained. As indicated, the result was that the entire case was dismissed.
 
 
 21
 While Count III of the complaint, taken in connection with the arbitration requirement of the rules of NYSE, is a complicating factor in the case, the real question before us is whether the district court erred in dismissing Count I and granting defendants a summary judgment on Count II.
 
 
 22
 The standards that a federal court is to apply in passing upon a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), are well settled. Such a motion should not be granted unless it appears beyond doubt that under no state of facts that could be proved would the plaintiff be entitled to relief. Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Donham v. United States, 536 F.2d 765, 768 (8th Cir. 1976); Bonner v. Circuit Court of City of St. Louis, Mo., 526 F.2d 1331, 1334 (8th Cir. 1975); Windsor v. Bethesda General Hospital, 523 F.2d 891, 893 (8th Cir. 1975). Nor should a complaint be dismissed merely because there is a lack of probability that the plaintiff will ultimately prevail. Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); Thomason v. Hospital T. V. Rentals, Inc., 272 F.2d 263, 266 (8th Cir. 1959). The complaint must be construed liberally in favor of the plaintiff; the facts alleged by him must be taken as true, and he is entitled to the benefit of all reasonable inferences in his favor that may be drawn from the alleged facts. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Barnes v. Dorsey, 480 F.2d 1057, 1060 (8th Cir. 1973); Park View Heights Corp. v. City of Black Jack, Mo., 467 F.2d 1208, 1212 (8th Cir. 1972).
 
 
 23
 The standards to be applied in passing on a motion for summary judgment under Rule 56 do not differ substantially from those that are applied in passing on a motion to dismiss under Rule 12(b)(6). See, e. g., Ledwith v. Douglas, 568 F.2d 117, 119 (8th Cir. 1978); Weber v. Towner County, 565 F.2d 1001, 1005 (8th Cir. 1977); Percival v. General Motors Corp., 539 F.2d 1126, 1128-29 (8th Cir. 1976); Windsor v. Bethesda General Hospital, supra, 523 F.2d at 893, n. 5.
 
 
 24
 The opinions of the district court reflect a full awareness of those standards.
 
 
 25
 I. Count I of the Complaint.
 
 
 26
 The Pick-Barth rule, its present status, and the sufficiency of Count I of the complaint to state a claim for relief under § 1 of the Sherman Act are adequately discussed in the published opinion of the district court, 430 F.Supp. at 1237-42, and no purpose would be served by our repeating or paraphrasing the discussion.
 
 
 27
 We do not consider that this circuit has categorically either accepted or rejected the rule of Pick-Barth, either as originally announced or as modified. As a matter of policy, we decline to adopt it in present context. We do not think that the type of unfair competition charged here should be characterized as a per se violation of § 1 of the Act.
 
 
 28
 In Apex Hosiery Co. v. Leader, supra, 310 U.S. at 512, 60 S.Ct. at 1002, the Supreme Court stated that the Sherman Act "was not enacted to police interstate transportation, or to afford a remedy for wrongs, which are actionable under state law, and result from combinations and conspiracies which fall short, both in their purpose and effect, of any form of market control of a commodity, such as to 'monopolize the supply, control its price, or discriminate between its would-be purchasers.' "
 
 
 29
 In Hunt v. Crumboch, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954 (1945), it was stated: "(The Sherman Act) does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."
 
 
 30
 A similar view was expressed in Whitten, supra, 508 F.2d at 560-62. See also the discussion in Boone, "Single-Corporation Competitive Torts and The Sherman Act: A Projection Based Upon A Review of the Albert Pick, Atlantic Heel, and Perryton Cases," 2 Georgia Law Review 372 (1968).[5]
 
 
 31
 Where, as here, an antitrust plaintiff alleges nothing more than that a competitor in interstate commerce has by means of unfair business practices deprived plaintiff of key employees, business and confidential records or information, but does not allege any public injury resulting from the defendant's conduct, plaintiff must seek relief at common law and not under § 1 of the Sherman Act.[6]
 
 
 32
 Alternatively, plaintiff argues that Count I of the complaint actually states a rule of reason claim. We disagree. We have carefully examined that count of the complaint and are of the opinion that it does not meet even the rather liberal standard laid down in Quality Mercury, Inc. v. Ford Motor Co., 542 F.2d 466, 472 (8th Cir. 1976), Cert. denied, sub nom. Prestige Lincoln-Mercury, Inc. v. Quality Mercury, Inc., 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).
 
 
 33
 Moreover, plaintiff's alternative contention based on the rule of reason is plainly nothing but an afterthought. Throughout the proceedings in the district court, that court openly and consistently characterized Count I as a per se violation claim based on Rick-Barth, supra, and not as a rule of reason claim. Plaintiff did not quarrel with that characterization. In this connection we observe that in its opinion of April 28, 1977, 430 F.Supp. at 1239, the district court said: "It is conceded that plaintiff has alleged no impact on interstate commerce in conformance with the rule of reason." In its motion for reconsideration of the order entered by the district court on the date just mentioned plaintiff vigorously attacked both the opinion and the order of the court, but we see nothing in the motion to suggest that plaintiff was claiming with respect to Count I anything other than a per se violation of § 1 of the Sherman Act.
 
 
 34
 The action of the district court in dismissing Count I of the complaint is affirmed.
 
 
 35
 II. Count II of the Complaint.
 
 
 36
 We hold that the district court erred in granting the defendants summary judgment on Count II of the complaint which charges a violation of § 2 of the Sherman Act.
 
 
 37
 From a reading of § 2[7] it is clear that if a plaintiff is to prevail on a § 2 claim it must appear that the defendant has achieved a monopoly, or that he has attempted to do so, or that he has combined or conspired with others to monopolize "any part of the trade or commerce among the several States, or with foreign nations."
 
 
 38
 In the leading case of United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966), the Supreme Court held that the offense of monopoly consists of two elements: (1) the possession of monopoly power and (2) the "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."
 
 
 39
 As to "monopoly power" the Grinnell court adopted the definition of such power that is set out in the earlier case of United States v. E. I. duPont de Nemours & Co., 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). In that case the Court said that monopoly power is "the power to control prices or exclude competition." The possession of monopoly power may be inferred from possession of the predominant share of the market. United States v. Grinnell Corp., supra, 384 U.S. at 571, 76 S.Ct. at 1005.
 
 
 40
 To the extent that a plaintiff relies on an attempt to monopolize rather than on an accomplished monopolization, he must allege and prove a specific intent to monopolize plus a dangerous probability of success in the relevant market area. United States v. Empire Gas Corp., 537 F.2d 296 (8th Cir. 1976), Cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977), and cases cited.
 
 
 41
 In the application of those principles about which there is no dispute to the record before him the district judge concluded as to Count II that there was no genuine issue as to any material fact, and that the defendants were entitled to summary judgment as a matter of law.
 
 
 42
 It appears to us that in reaching its conclusion the district court relied primarily on the affidavit of the defendant, Stamp, which affidavit was not controverted, although the court doubtless considered all of the materials before it.
 
 
 43
 Accepting as true the factual allegations of that affidavit, it appears therefrom that as of early February, 1977, Cedar Rapids was being served by five brokerage firms including Dain, which firms had a total of forty registered representatives of whom ten were working for Dain. Twelve were working for Loewi & Co., Inc.; ten were employed by Securities Corporation of Iowa; and First Mid America, Inc. and Shearson Hayden Stone, Inc. had four representatives apiece.
 
 
 44
 As to Iowa City, Stamp stated that Dain had six registered representatives, that Stifel had three, that IDS Marketing Corporation had five, and that Securities Corporation of Iowa had two.
 
 
 45
 Stamp stated further that the situation prevailing in Iowa City and Cedar Rapids in February, 1977 was approximately, although perhaps not exactly, the same as had existed in January, 1976.
 
 
 46
 Going beyond the immediate Iowa City-Cedar Rapids area, Stamp pointed out that Iowa investors are served by at least ten other brokerage firms with offices in Iowa and Minnesota, which provide services to investors in the immediate area in question.
 
 
 47
 After discussing the Stamp affidavit and pointing out that plaintiff had not come forward with any opposing material, See Fed.R.Civ.P. 56(e), the district court concluded that Dain's share of the market in the Iowa City-Cedar Rapids area was less than 30% "based on the number of representatives in the area and on the ready availability of investment services from businesses in geographical proximity." The district court held that in such circumstances Dain lacked sufficient monopoly power to satisfy the requirements of § 2 and cited in that connection Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 974-75 (8th Cir. 1968), Cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). As to the attempted monopoly claim, the court stated that "as a matter of law . . . Stifel can neither show a dangerous probability of success, an element of attempted monopolization which was not pled . . . nor can it show a specific intent to monopolize." 430 F.Supp. at 1243.
 
 
 48
 Fed.R.Civ.P. 56 provides in general that if the overall record in a case establishes that there is no genuine issue as to any material fact, and that one of the parties is entitled to judgment as a matter of law, that party, whether a plaintiff or defendant, may move for and obtain a summary judgment. Affidavits and other evidentiary material may be considered, and subdivisions (e), (f) and (g) of the Rule deal with such material.
 
 
 49
 The last two sentences of Rule 56(e) were added in 1963 for the purpose of making it clear that genuine issues of fact are not created merely by allegations in the pleadings, and that if a party who moves for summary judgment supports his motion with evidentiary material such as affidavits, the opposing party cannot stand on his pleadings but is required to come forward with some proof of his own; if he does not do so, then "summary judgment, If appropriate, shall be entered against him." (Emphasis added.)
 
 
 50
 It is obvious that even if the facts stated in an affidavit in support of a Rule 56 motion are true, the affidavit does not necessarily establish the appropriateness of a summary judgment; Rule 56(e) does not change the general standards to be applied in passing upon summary judgment motions, and does not necessarily entitle the moving party to have the benefit of favorable inferences that might be drawn from the affidavit. See in this connection the full discussion which appears in 10 Wright & Miller, Federal Practice & Procedure, § 2739, pp. 714-20, and the numerous cases cited including Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
 
 
 51
 We think that the district court was justified in accepting as true as far as they went the facts set out in the Stamp affidavit. However, the affidavit tells us nothing about the volume of business that Dain is handling in comparison to the volume being handled by other brokerage firms in the area, and the affidavit is silent as to the present or future plans of Dain in the area.
 
 
 52
 It may be doubted that Stifel will be able to make a § 2 case against Dain and the other defendants. We are not prepared to say, however, that as a matter of law Stifel will not be able to prevail if the § 2 claim is tried on the merits, and we think that it should have an opportunity to attempt to make its case. The mere fact that Stifel's ultimate success is doubtful is no reason for granting summary judgment against it.
 
 
 53
 III. Conclusion.
 
 
 54
 There are two things that we would say at the conclusion of this opinion.
 
 
 55
 First, while we are satisfied that Count I did not allege a per se violation of § 1 of the Sherman Act and did not adequately allege a rule of reason violation, it may be possible for plaintiff to amend Count I so as to allege a violation of the latter type. Since there must be a trial on the merits with respect to Count II, plaintiff may desire to file a motion for leave to amend Count I. Such a motion would address itself to the discretion of the district court.
 
 
 56
 Second, as to Count III, we think that plaintiff's effort to reassert its antitrust claims in its amended complaint was improper; however, it seems clear to us that the allegations of diversity and jurisdictional amount that appear in amended Count III are adequate to confer independent, rather than pendent, jurisdiction of that count on the district court. Should plaintiff prevail on an antitrust theory and obtain treble damages, amended Count III will simply become moot. If plaintiff does not prevail on an antitrust theory and has to rely on the common law claim set out in amended Count III, it will be appropriate for the district court to give such further attention, if any, as may be necessary to the question of the compulsory arbitrability of that particular claim.
 
 
 57
 Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation
 Section 2 of the Act makes it illegal for any person to monopolize, or attempt to monopolize, or to conspire with any other person or persons, to monopolize any part of interstate or foreign commerce.
 Section 4 of the Clayton Act of 1914, 15 U.S.C. § 15, gives to an individual who is injured as a result of violations of § 1 or § 2 of the Sherman Act a private cause of action in which, if successful, he may recover treble damages, costs and an attorney's fee.
 
 
 [2]
 The record as a whole establishes that there is diversity of citizenship between the plaintiff on the one hand and all of the defendants on the other hand, and that the amount in controversy is far in excess of $10,000.00 exclusive of interest and costs. It is clear, however, that counsel for plaintiff made no effort to base jurisdiction of Count III on diversity, and the formal allegations of the complaint were insufficient to establish complete diversity
 
 
 [3]
 While the principal brief of the defendants and the reply brief of the plaintiff deal to a very limited extent with the question of whether the actions that have been taken by the district court are appealable at this time in view of the problem caused by the situation that exists with respect to Count III, neither side has argued any jurisdictional question seriously. We have considered the question and conclude that we have jurisdiction and should consider the appeal on the merits
 
 
 [4]
 Plaintiff does not contend, of course, that it is entitled to plural recoveries. Thus, the common law claim is relevant only if plaintiff cannot prevail on either of its antitrust claims
 
 
 [5]
 The original Pick-Barth rule was followed in Atlantic Heel Co. v. Allied Heel Co., 284 F.2d 879 (1st Cir. 1960), in Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas, Inc., 353 F.2d 618 (10th Cir. 1965), and in C. Albert Sauter Co. v. Richard S. Sauter Co., 368 F.Supp. 501 (E.D.Pa.1973). The cited Georgia Law Review article was written several years before the Whitten case, Supra, was decided. The Sauter case is the subject of a Note appearing in 59 Iowa Law Review 1194 (1974)
 
 
 [6]
 Allegations that the predator is a significant factor in the market and has acted with intent to destroy plaintiff as a competitor do not transform such unfair business practices into per se Sherman Act § 1 violations
 The problem at hand calls to mind one sometimes presented in cases where stockholders seek to invoke a federal statutory remedy against corporate management under the provisions of the Securities Act of 1933, 15 U.S.C. §§ 77a Et seq., or the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a Et seq., rather than to pursue a common law remedy. In Golub v. PPD Corp., 576 F.2d 759, p. 764 (8th Cir. 1978), we said in this connection:
 . . . (I)t was not the purpose of the federal security laws to provide a federal cause of action for stockholders who have been damaged by mere corporate mismanagement or breach of fiduciary duty by those in charge of the affairs of the corporation. Controversies in those areas have traditionally been the subject of litigation in the state courts, and federal legislation in the field of securities regulation was not designed to draw such controversies into the federal courts in the absence of diversity of citizenship and requisite amount in controversy.
 See also St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir. 1977).
 
 
 [7]
 See n.1, Supra