MEMORANDUM AND ORDERS ON MOTIONS FOR SUMMARY JUDGMENT AND DISMISSAL
Garrity, J.
This case arises out of the termination of a distributorship agreement between William Harvey, a division of manufacturer C. R. Bard, Inc., the plaintiff, and distributor Medical Electronics Corp. (MEC)., the defendant. Bard seeks to recover damages of $137,525.14 for goods sold and delivered to, but not paid *164 for by, defendant, plus interest and reasonable attorneys’ fees. MEC, buyer, counterclaims on five grounds relating to the alleged breach of the distribution agreement.
Without reciting all the facts of this case, we sketch relevant background. Plaintiff Bard, a leading manufacturer of medical equipment, through its William Harvey division, entered into a Manufacturer-Distributor Agreement on May 1, 1980. Under the agreement, which ran for 10 pages absent exhibits, Harvey agreed to sell its products to defendant MEC at net prices as set by Harvey. Harvey retained the right to sell its products directly to other distributors and users or engage other distributors without regard to geographic location. MEC agreed to purchase an annual minimum, and agreed to various clauses relating to inventory maintenance, promotion, and provision of credit information. The agreement was for a 6-month term and was renewed automatically unless a party gave written notice of termination 15 days in advance of the expiration date. Harvey was also authorized to terminate in various other circumstances, including default of MEC in payment according to terms. Between January 19, 1981 and March 19, 1981 Harvey delivered, and sold MEC goods valued at $153,852.75. With freight charges included, and certain adjustments, the bill came to $155,906.29, After MEC returned some inventory to Harvey the bill was reduced to its present amount $137,523.14. On March 9, 1981, Harvey notified MEC in writing of its decision to terminate the distribution agreement. By letter 11 days later, MEC notified Harvey of its intention, pursuant to U.C.C. § 2-717, “to withhold and offset all sums due Harvey under the Agreement.” MEC alleged that Harvey had breached the implied covenant of good faith and fair dealing by enticing MEC’s regional salesman, Ron Whitfield, to work directly for Harvey, and by falsely advising MEC earlier in 1981 that the agreement would be renewed. Bard and Harvey denied these allegations.
Bard filed suit on May 7, 1981 in Suffolk Superior Court. MEC removed the action to federal district court and filed its counterclaim. The action is within the diversity jurisdiction of the court and the amount in controversy exceeds $10,000.
Plaintiff moved a) for summary judgment and entry of final judgment on its contract claim, and b) for dismissal of Counts IV and V of defendant’s counterclaim. The Court heard oral argument on December 21,1981 on those motions which we discuss and decide in turn.
Plaintiff’s Motion for Summary Judgment and Entry of final Judgment
Summary judgment is proper when 1) specified filings reveal no genuine issue as to any material fact” and 2) “the moving party is entitled to a judgment as a matter of law.” Federal Rule of Civil Procedure 56(c). MEC’s admissions establish that it purchased goods from Harvey valued at $137,525.14 for which it has not paid. These admission would entitle Bard to summary judgment absent a valid defense supported by a statement of “specific facts showing that there is a genuine issue for trial.” Fed. Rule Civ. Pro. 56(3). Defendant MEC raises eight affirmative defenses: failure to state a claim, violation of the Massachusetts antitrust statute G.L.c. 93, violation of the Massachusetts statute proscribing unfair practices, G.L.c. 93A, § 2, estoppel, justification, impossibility, violation of the duty of good faith imposed by the Uniform Commercial Code, and willful violation of the distributorship agreement by plaintiff.[1] In light of defendant’s admissions, the defense of failure to state a *165 claim is clearly frivolous. The “antitrust defense” is generally unsuccessful when raised by a purchaser in a suit against him for the agreed price of goods sold. Kelly v. Kosuga, 1959, 358 U.S. 516, 518, Gutor International AG v. Raymond Packer Co., Inc., 1 Cir. 1974, 493 F.2d 938, 946-947, and has been limited to circumstances where the violation of the antitrust act inheres in the sale, Dickstein v. du Pont, 1 Cir. 1971, 443 F.2d 783, 786-87, a situation clearly absent here. MEC relies on the Massachusetts Antitrust Act, rather than the Sherman Act, for its antitrust defense. Since the Massachusetts statute provides that it shall be construed in harmony with the Sherman Act,'the federal cases cited represent principles applicable to the state act as well.
MEC’s “principle defense” is that Bard breached the agreement by failing to act in good faith and to deal fairly as required by §§ 1-203 and 2-717 of the Uniform Commercial Code and by Fortune v. National Cash Register, 1977, 373 Mass. 96.[2] Specifically, MEC alleges that 1) a Bard sales manager failed to support MEC, 2) Bard tried to lure away MEC’s key sales manager, and 3) Bard, shortly before terminating the distributorship agreement, assured MEC that the relationship would continue as long as sales goals were met. These allegations, even if true, are insufficient to establish a defense to plaintiff’s contract claim.
The U.C.C. § 1-203, as adopted by Massachusetts, G.L.c. 106, § 1-203, provides:
Obligation of Good Faith. Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement.
Although the precise contours of “good faith” as used in the U.C.C. are unclear, see Gillette, “Limitations on the Obligation of Good Faith,” Duke Law Journal (1981) 619-665, defendant assigns the concept too broad a reach. The U.C.C. defines “good faith” as “honesty in fact in the conduct or transaction concerned.” G.L.c. 106, § 1-201(19). Here the “transaction concerned” in Bard’s complaint is the sale pf the goods for which MEC has not paid and Bard quite clearly had the good faith duty the U.C.C. imposes regarding that sale.
But MEC here alleges, as its defense to Bard’s action for the price of the goods sold and delivered, not that Bard failed to act in good faith regarding the sale of those goods but rather that Bard failed to act in good faith regarding the larger distributorship agreement. The theory underlying that defense is too broad. Absent some bad faith by Bard in the sale of the goods itself, MEC lacks a good faith defense under the U.C.C. to Bard’s claim for the price.
The cases which defendant cites in its brief, Fortune v. National Cash Register, supra, and at oral argument, Gram v. Liberty Mutual Insurance Co., 1981 Mass. Adv. Sh. 2287, do not help MEC’s defense against Bard’s claim. To begin with, those cases did not construe the U.C.C. but rather involved common contract law in the employment context. Moreover, those cases are clearly distinguishable.
Fortune held that a contract for employment at will was breached, under the facts of that case, when an employer terminated a salesman who was compensated on a commission basis in order to avoid paying the salesman future commissions due for contracts the employee had recently arranged. Moreover, Fortune held that the salesman could sue the employer to recover damages for an employers breach of that good faith *166 covenant. Fortune explicitly did not reach the question whether every contract contains an implied covenant of good faith and. fair dealing. Fortune v. National Cash Register, supra, at 104, Gram v. Liberty Mutual Ins. Co., supra at 2294-2295. In Gram/the S.J.C. declined “to adopt a general rule that the discharge of an at-will employee without cause is alone a violation of an employee’s obligation of good faith anq fair dealing”, but held that “the obliga-i tion of good faith and fair dealing impos-\ ed on an employer requires that the employer be liable for the loss of compensation that is so clearly related to an employee’s past service, when the employee is discharged without good cause.” Ibid, at 2299-2300. Fortune and Gram may be relevant, and helpful to defendant’s counterclaim for violation of the distributorship agreement. But, since neither held that an employer’s breach of contract afforded the employee a defense to obligations unrelated to that breach, they are not helpful as defenses to Bard’s contract action.
MEC’s remaining defenses. — estoppel, justification, excuse, plaintiff’s alleged unfair practices, and its alleged willful violation of the contract — rely on the same facts as the good faith defense. Even if MEC properly stated facts sufficient to set out each element of those defenses, it still would lack a defense to Bard’s claim since thosé theories, like the good faith defense, address the termination of the distributorship agreement rather than the actual sale of the goods.'
MEC also claims that the U.C.C. § 2-717, as incorporated, in Massachusetts law, G.L.c. 106, § 2-717, authorizes it to withhold payment for the goods received. That statute provides:
Deduction of Damages from Price. The buyer on notifying the seller of his intention so to do may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.
Defendant, as § 2-717 requires, notified Bard of its intention to deduct from the price. We conclude, however, that MEC has construed this provision too broadly. To be sure, the drafters intended § 2-717 to broaden the buyer’s right to deduct and did not limit that remedy to cases involving breach of warranty. Comment 1 to U.C.C. § 2-717. But as Judge Duncan has pointed out, § 2-717 “is not a generalset-off provision permitting a buyer of goods to adjust its continuing contract obligations according to the \ equities perceived by the buyer.” Columbia Gas Transmission Corp. v. Larry H. Wright, Inc. S.D. Ohio, 1977, 443 F.Supp. 14, pp.. 14, 20. Damages are deductible only againolumbia Gas Transmission Corp. v. Larry H. Wright, Inc. S.D. Ohio, 1977, 443 F.Supp. 14, 20. Damages are deductible only against the price still due under the same contract. Moreover, we believe that in order for a buyer \to invoke § 2-717, the asserted breach piust go to the essence of the transaction under which the seller seeks to recover his price. Here the breaches asserted by the buyer largely relate to the termination of the distributorship agreement: there is no hint that seller acted improperly in any way regarding the actual sale or delivery of the goods. A buyer should not be able, by asserting a remote breach of contract, to delay payment for goods accepted. The recent expansion of the “good faith” concept, uniquely susceptible as it is to frivolous, as well as authentic, assertions, makes necessary some confinement of the scope of § 2-717. The high contemporary level of interest rates provides further reason for a more narrow construction of that provision.
Contrary to defendant’s argument, the First Circuit did not, in Gutor International AG v. Raymond Packer Co. Inc., 1 Cir. 1974, 493 F.2d 938, recognize the right of a buyer to offset damages stemming from termination of a distributorship. Rather, the First Circuit explicitly acknowledged that defendant Packer never gave plaintiff Gutor notice of its in *167 tent to invoke § 2-717 and thus forfeited “whatever right, or claim of right, it might have had” to act under that provision. Ibid, at 943. Thus, it never reached the question here at issue.
In view of MEC’s admissions of the receipt and non-payment of goods from Harvey, coupled with MEC’s lack of a defense to Bard’s claim, we conclude that no genuine issue of material fact exists to be tried regarding Bard’s claim for recovery of the price of those goods and that Bard shoud prevail on its claim as a matter of law. Accordingly, we grant Bard summary judgment on its complaint.
Bard also seeks entry of final judgment on its complaint under Rule 54(b), Fed. R. Civ. P. That rule provides, in pertinent part:
(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
The decision whether to certify as a final judgment rests largely in the discretion of the trial court, Sears, Roebuck & Co. v. Mackey, 1956, 351 U.S. 427, 437, but the Supreme Court has suggested some appropriate inquiries. See Curtiss-Wright Corp. v. General Electric Co., 1980, 446 U.S. 1. Relevant factors may include, but are not limited to, the equities between the parties, Ibid, at 8, 10, 11-12, including the difference between the statutory and market rates of interest, Ibid, at 11, and judicial administrative interests. Ibid, at 8. Upon consideration of those factors, we conclude that “there is no just reason for delay.” Fed. Rule Civ. Pro. 54(b). Plaintiff’s claim, as discussed above, is for recovery of an ascertainable sum for goods sold and delivered. That amount is considerable. In such a situation, we see no reason why plaintiff should be denied the use of those funds while awaiting disposition of MEC’s counterclaims. The amount Bard would ultimately recover as interest calculated at the statutory rate is surely significantly less than the market would yield, especially to a sophisticated investor. Bard is clearly solvent and good for any judgment to which MEC might ultimately be entitled on its counterclaims. Nor is MEC’s survival jeopardized by entry of-final judgment for Bard; an affidavit by MEC’s president, filed on August 17, 1981 reveals that it possesses considerable assets. Finally, the issues Bard’s complaint raises are independent o( those in MEC’s counterclaim so that entry of final judgment does not present a danger that the Court of Appeals will be called upon twice to review the same issues. See Curtiss-Wright Corp. v. General Electric Co., supra. MEC’s reliance of Gutor International AG v. Raymond Packer Co., Inc., supra at 944 n. 9 and 948, is misplaced. There the district court had initially granted plaintiff summary judgment on its claim and on defendant’s counterclaim. In affirming summary judgment for plaintiff on its claim but reversing on defendant’s counterclaim, the First Circuit granted leave to the district court to stay enforcement of the judgment on plaintiff’s claim. Since the appellate court, in reversing that part of the lower court’s decision denying defendant’s counterclaim, had returned some issues to the trial court for further consideration, it was, in effect, suggesting that the trial court consider the equities of enforcing plaintiff’s judgment before disposition of defendant’s counterclaim. That issue had, of course, not arisen before, since the district court initially decided all claims. The First Circuit explicitly left that determination to “the discretion of the district court”, Ibid, at 944 n. 9, and elsewhere in the opinion acknowledged the utility of Rule 54(b). ibid, at 947.
*168 Accordingly, the Coúrt plans to enter final judgment on Bard’s complaint. Bard has not, however, submitted a motion and affidavit detailing its reasonable attorneys’ fees; and MEC has not addressed Bard’s claim for interest as stated in “Plaintiff’s Amended Motion for Summary Judgment Under Rule 56 and for Entry of Final Judgment Under Rule 54(b)” or Bard’s claims for reasonable attorneys’ fees. We defer entry of final judgment until receipt of submissions addressing these issues, as ordered below.[3]
Motion to Dismiss
Bard also has moved to dismiss Counts TV and V of MEC’s counterclaim for failure to state a claim under the Sherman Antitrust Act, 15 U.S.C. §§1,2 and under the parallel Massachusetts Antitrust Act, G.L.c. 93, §§ 4, 5. Essentially, MEC alleges that the requisite contract, combination or conspiracy existed between Bard, Whitfield and indirectly MEC’s customers[4] and that this agreement restrained trade in violation of 15 U.S.C. § 1 and G.L.c, 93, § 4. MoreoVer, MEC alleges that Bard was attempting to monopolize distribution in the medical equipment market in violation of 15 U.S.C. § 2 and G.L.c. 93, § 5. .
Although “summary procedures should' be used sparingly in complex antitrust litigation,” Poller v. Columbia Broadcasting System, Inc., 1962, 368 U.S. 464, 473, “sparingly” is not synonymous with “not at all,” and the party claiming an antitrust violation must still allege, to survive a motion to dismiss, sufficient facts to state each, element of an antitrust offense. See, Gilbuilt Homes, Inc. v. Continental Homes of New England, 1 Cir., Dec. 16, 1981, No. 81-1200; Americana Industries Inc. v. Wometco de Puerto Rico, 1 Cir. 1977, 556 F.2d 625, 627-28.
MEC has not done so. The Sherman Act addresses and proscribes unreasonable anticompetitive behavior. It does not prevent a private manufacturer who lacks market power from deciding independently with whom it will deal. United States v. Colgate & Co., 1919, 250 U.S. 300, 307; Gilbuilt Homes, Inc. v. Continental Homes of New England, supra, slip opinion at 3. Vertical integration, the situation where a manufacturer decides to distribute its own products rather than rely on independent distributors, does not threaten competition where substantial market power is absent at either the product or distribution level. Auburn News Company, Inc. v. Providence Journal Company, 1 Cir. 1981, 659 F.2d 273, 278.
MEC fails to state a claim in two respects. Its complaint, even when read with the gloss added by MEC’s brief, fails to allege a contract, combination or conspiracy. We do not believe that the conclusory allegations and the contract to employ Whitfield can constitute an agreement in restraint of trade forbidden by the Sherman Act. In Gilbuilt Homes, Inc. v. Continental Homes of New England, supra, the Court dismissed for failure to state a claim under 15 U.S.C. § 1, a complaint regarding termination of a vertical business relationship. The First Circuit concluded that the complaint contained only “conclusory allegations of an ‘internal conspiracy’ ” and failed to suggest that “the decision to términate (the) dealer was other than an intracorporate one.” Ibid, at 3-4. Significantly, the complaint in that case contained an allegation that the manufacturer “did entice and hire away from the (builder/dealer) some of its sales person *169 nel.” Ibid, at 4.[5] Following Gilbuilt we hold that conclusory allegations and a reference to hiring away a key employee cannot, under these facts, constitute a contract, conspiracy or combination.
MEC’s complaint also does not state a claim for relief under 15 U.S.C. § 1 since it fails to allege an unreasonable restraint of trade. “(V)ertical integration, as such without more, cannot be held violative of the Sherman Act.” United States v. Columbia Steel Co., 1948, 334 U.S. 495, 525-26; Auburn News Company, Inc. v. Providence Journal Company, supra at 278. Here MEC alleges nothing more. MEC does not allege that Bard has market power. See Ibid. The mere cancellation of a distributorship is not an unreasonable restraint of trade that the Sherman Act proscribes, Bushie v. Stenocord Corp., 9 Cir. 1972, 460 F.2d 116, nor is the deprivation of a key employee. Stifel Nicolaus & Co., Inc. v. Dain, Kalman & Quail, Inc., 8 Cir. 1978, 578 F.2d 1256, 1261.
MEC relies upon Industrial Bldg. Materials, Inc. v. Interchemical Corp., 9 Cir. 1970, 437 F.2d 1336, in which the Ninth Circuit held that the district court should not have granted summary judgment to the defendant in an antitrust claim alleging that the defendant-manufacturer, who had vertically integrated, had conspired with others to force the plaintiff distributor out of business in restraint of trade. That case is distinguishable. First, the distributor there alleged that the manufacturer “sought to drive it out of business by unlawful means,” Ibid, at 1341, an allegation absent here. Second, the distributor there alleged that the manufacturer had monopoly power, or at least a dominant position, in its market “so that any action tending to strengthen that position would be an unreasonable restraint of trade. ” Ibid, at 1343. Here, however, MED has not alleged that Bard has such power, an omission that assumes importance since the Ninth Circuit in Industrial Bldg. Materials, Inc., at 1343, explicitly did “not decide what result (it) would reach if the same actions were taken by a less powerful member of the industry.” Finally, there the alleged conspiracy involved the officers of two corporations as well as the distributor’s salesman and customers. Acordingly we hold that MEC fails to state a claim under 15 U.S.C. § 1 since it alleges no unreasonable restraint on trade.
MEC also fails to state a claim for relief under 15 U.S.C. § 2 for attempt to monopolize. A claim of attempt to monopolize “must establish both an intent to monopolize and a dangerous probability of successful monopolization.” George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 1 Cir. 1974, 508 F.2d 547, 550. Hence, an attempt to monopolize case must include a market definition. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 1965, 382 U.S. 172, 177; Gilbuilt Homes, Inc. v. Continental Homes of New England, supra, slip opinion at 4; George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., supra at 550. The party pressing a claim based on attempt to monopolize must plead facts sketching “relevant details of a § 2 claim” including “facts defining the market.” Gilbuilt Homes, Inc. v. Continental Homes of New England, supra, slip opinion at 4. MEC alleges only that Bard and Harvey, in hiring MEC’s salesman Whitfield to work for Harvey, engaged in “an attempt to monopolize...trade in the medical equipment and product market.” MÉC fails to specify an adequate product or geographic market and fails “to allege facts and circumstances tending to show that (Bard) has substantial market power.” Americana Industries v. Wometco de Puerto Rico, supra at 628.
*170 Therefore, we dismiss Count V of MEC’s counterclaim alleging violations of Sherman Act §§ 1 and 2. The Massachusetts Antitrust Act, G.L.c. 93, § 1 provides that it “shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable.” Sections 4 and 5 of the Massachusetts Act are directly comparable to sections 1 and 2 respectively of the Sherman Act. Accordingly, we also dismiss Count IV of MEC’s counterclaim.
ORDERS
The court grants plaintiff Bard summary judgment on its complaint in the amount of $137,525.14 plus interest, perhaps supplemented by attorneys’ fees, and dismisses Counts IV and V of defendant MEC’s counterclaim. The court defers entry of final judgment until after determination of plaintiff’s claims for attorneys’ fees and for interest. It is ordered that the parties endeavor to. stipulate resolution of these issues. Failing agreement, 1) plaintiff shall file by January 29, 1982 a motion for recovery of attorneys’ fees accompanied by a memorandum of law and supporting affidavit(s) computing a claimed lodestar, see Furtado v. Bishop, 1 Cir. 1980, 635 F.2d 915, and adjustments based upon the 12 factors identified in King v. Greenblatt, 1 Cir. 1977, 560 F.2d 1024; 2) defendant shall file by January 29, 1982 a response to plaintiff’s claim for interest, with particular attention to the claims and calculations on pages 2-3 of “Plaintiff’s Amended Motion for Summary Judgment Under Rule 56 and for Entry of Final Judgment Under Rule 54(b)”, which was filed on November 23, 1981; 3) defendant shall file by February 11, 1982 a memorandum responsive to plaintiff’s claim for attorneys’ fees.
A. W. Garrity Jr. United States District Judge

. MEC also defends by alleging in its answer violations of various unspecified statutes. The Court obviously cannot consider the merits of such “defenses.” Since MEC has not specified these defenses in its briefs or by amendments to its answer, we conclude that it has waived these other “defenses” and we limit our consideration to those stated in its answer.

. Although the Manufacturer-Distributor Agreement provides that it shall be interpreted according to California law, the parties cited no California cases in their briefs, relying instead on Massachusetts case law. The Court interprets this reliance, and defense counsel's statement at the hearing, when the Court raised the point, that he assumed that the law in California was the same as in Massachusetts, as signifying their agreement that Massachusetts decisions are applicable precedent. The Court notes that California and Massachusetts have both adopted the U.C.C. provisions relevant to this case.

. Counsel are directed to confer at their earliest convenience in an effort to stipulate resolution of either or both of these Issues.

. MEC claims in its brief that the purported contract, combination or conspiracy involved Bard, Whitfield and MEC’s customers. MEC’s counterclaim did not make this clear, indeed left it so obscure that Bard quite reasonably assumed MEC was alleging a conspiracy between Bard and Harvey. For purposes of this motion we accept MEC’s clarification in its brief as its statement of the contract, combination or conspiracy.

. To be sure, the complaint in Gilbuilt Homes apparently was more deficient than the one here and the reference to efforts to "entice” sales personnel apparently came in the portion of the complaint alleging a violation of 15 U.S.C.8 2, not 15 U.S.C.8 1. We believe that these differences do not remove this.case from the holding of Gilbuilt.